A06A0645. SUMMERLIN v. GEORGIA PINES COMMUNITY
SERVICE BOARD.
(630 SE2d 115)

JOHNSON, Presiding Judge.

This appeal arises from a suit filed by Marilyn Summerlin, individually and as administratrix of George Summerlin's estate, asserting a wrongful death claim against Georgia Pines Community Service Board following the death of her adult son, George Summerlin. The record shows that Georgia Pines is a state entity created pursuant to OCGA § 37-2-1 et seq. to provide an array of supports and services to individuals and families affected by mental illness, substance abuse or mental retardation.[1] Such personal care homes are regulated by Department of Human Resources Public Health Rules promulgated by the Office of Regulatory Services. George Summerlin was a resident at a Georgia Pines personal care home at the time of

---

[1] See generally *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.,* 273 Ga. 715, 716 (1) (545 SE2d 875) (2001).

his death on August 27, 2001. He was placed in the home as a transitional placement following his discharge from Southwestern State Hospital.[2] George Summerlin was physically in good health, but had been diagnosed with mental retardation and schizoaffective disorder.

On the morning of August 27, 2001, staff found George Summerlin dead in his room, in a contorted position with his upper torso hanging off the bed. The medical examiner from the Georgia Bureau of Investigation believed George Summerlin may have had a seizure that caused him to end up in a contorted position that led to asphyxia. However, the medical examiner noted that this conclusion was pure speculation and gave some alternative theories. The medical examiner asserted that regardless of the cause, George Summerlin's death from compressional asphyxia would have occurred within five to fifteen minutes after he ended up in the contorted position in which he was found.

The Department of Human Resources performed a death review and concluded that there were "no apparent factors of neglect or misconduct in the death of George Summerlin." However, the report noted three factors that must be considered as significant: (1) George Summerlin's refusal to comply with recommended medical care, (2) George Summerlin's elevated valproic acid levels, and (3) Georgia Pines' lack of clear "bed check" procedures at the time of the death. Subsequently, the reviewer changed her conclusion, noting that "even though Georgia Pines Community Service Board did not have specific policy describing the procedure for conducting 'bed checks', Carlos Hernandez was negligent in the fact that he did not 'check' the consumers."

On May 17, 2002, Marilyn Summerlin (hereinafter "Summerlin") served an ante litem notice for her claims related to George Summerlin's death. She subsequently filed suit on June 9, 2003. Both the complaint and the summons indicated that Georgia Pines could be served by delivering a copy of the complaint to Robert H. Jones, Administrator of Georgia Pines, at 1102 Smith Avenue, Thomasville, Thomas County, Georgia 31702. Nevertheless, on June 10, 2003, apparently because Jones was not available, deputies left a copy of the summons and complaint with Connie Brogdon, the personnel manager at Georgia Pines, at the address listed in the summons. Brogdon had never been appointed as an agent to accept service of process for Georgia Pines, and never represented to anyone that she

---

[2] George Summerlin had been involuntarily admitted to Southwestern State Hospital after exhibiting irrational behavior, including threats of harm to others, hallucinations, and manic thoughts and behavior. He had previously been admitted to other facilities during the prior year for physically and sexually threatening his mother.

had been. She had never before accepted service on behalf of Georgia Pines. It is undisputed that Robert Jones, the director of Georgia Pines, has never been personally served in this action. The improper service issue and the failure to follow the service mandates of OCGA § 50-21-35 were raised in Georgia Pines' answer, filed on July 10, 2003, and Georgia Pines' responses to Summerlin's interrogatories, filed on August 5, 2003.

On June 6, 2005 Georgia Pines filed a motion for summary judgment, raising several sovereign immunity issues. The trial court granted the motion on the basis that there was no waiver of sovereign immunity due to Summerlin's failure to properly serve Georgia Pines in accordance with the Georgia Tort Claims Act, OCGA § 50-21-35. We disagree and reverse the trial court's order.

1. There was no deficiency in Summerlin's service of process on Brogdon, the personnel manager for Georgia Pines. Under Georgia law, a defendant challenging the sufficiency of service of process bears the burden of establishing that the service was insufficient.[3] Georgia Pines has not met that burden. Georgia Pines incorrectly argues that the service provisions of OCGA § 50-21-35 *alone* must be adhered to or there is no waiver of sovereign immunity for a state agency. While the Georgia Tort Claims Act clearly provides the exclusive remedy for any tort committed by a state officer or employee,[4] and the procedural strictures of the Georgia Tort Claims Act must be strictly construed,[5] this does not render the service provisions in OCGA § 9-11-4 inapplicable.

In interpreting statutes, the courts must look to the intent of the legislature and construe statutes to effectuate that intent.[6] Statutes relating to the same subject matter must be construed together and harmonized whenever possible.[7] Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.[8]

Because Georgia Pines is a state entity, service of process on it is addressed by two statutes: OCGA § 9-11-4 (e) (5) (service in civil actions on public bodies or organizations) and OCGA § 50-21-35 (service under the Georgia Tort Claims Act). A reading of OCGA § 9-11-4 (j) clearly shows Georgia Pines' contention that it could only be served using OCGA § 50-21-35 is incorrect. OCGA § 9-11-4 (j) clearly provides that the methods of service provided in OCGA

---

[3] See *Duke v. Buice*, 249 Ga. App. 164, 165-166 (547 SE2d 561) (2001).

[4] OCGA § 50-21-25 (a).

[5] See *Curry v. Ga. Dept. of Corrections*, 232 Ga. App. 703, 703-704 (1) (503 SE2d 597) (1998).

[6] See *City of Roswell v. City of Atlanta*, 261 Ga. 657 (1) (410 SE2d 28) (1991).

[7] See *Gibson v. Casto*, 271 Ga. 667, 668 (523 SE2d 564) (1999).

[8] See *VSI Enterprises v. Edwards*, 238 Ga. App. 369, 373 (1) (a) (518 SE2d 765) (1999).

§ 9-11-4 are cumulative and may be utilized with, after, or independently of other methods of service. The subsection specifically notes: "Whenever a statute provides for another method of service, service may be made under the circumstances and in the manner prescribed by the statute or under any other methods prescribed in this Code section."[9] The legislature did not exempt the Georgia Tort Claims Act from this subsection. Thus, contrary to Georgia Pines' contention, the service provisions in OCGA § 9-11-4 apply in this case.

OCGA § 9-11-4 (e) (5) provides that service against a public body or organization not specifically noted in the statute shall be made to the chief executive officer or the clerk thereof. While the word "clerk" is not defined in the statute, "all words, except words of art, shall be given their ordinary significance."[10] Black's Law Dictionary defines the word "clerk" as a person employed in public office "whose duties include keeping records or accounts."[11] The American Heritage Dictionary defines the word "clerk" as a person who works in an office "performing such tasks as keeping records, attending to correspondence, or filing."[12] Here, it is undisputed that Brogdon is the personnel manager for Georgia Pines and that her responsibilities involve "personnel, including benefits, orientation, personnel actions, and other related responsibilities." She is clearly a manager whose duties include keeping records or accounts and, thus, a clerk within the meaning of OCGA § 9-11-4.

Moreover, contrary to Georgia Pines' argument, Summerlin was not required to "personally" serve the chief executive officer of Georgia Pines to effectuate service of process under OCGA § 9-11-4 (e) (5). The legislature could have, but chose not to, include the word "personally" in this particular subsection of the statute.[13] By serving a clerk in Jones' office, Summerlin complied with the statutory mandates for service of process.

Even under OCGA § 50-21-35, Summerlin properly served Georgia Pines, because, like OCGA § 9-11-4 (e) (5), OCGA § 50-21-35 does not use the word "personally" to describe the nature of the service required upon the chief executive officer. The statute only mandates that the chief executive officer must be served at his office address, which was done in this case. The two statutes must be read together and harmonized. Because Summerlin served a clerk of the chief executive officer at the office address of the chief executive officer, service was sufficient under both statutes. The trial court erred in

---

[9] OCGA § 9-11-4 (j).
[10] *City of Roswell*, supra; OCGA § 1-3-1 (b).
[11] Black's Law Dictionary 246 (7th ed. 1999).
[12] The American Heritage Dictionary 280 (2nd ed. 1985).
[13] Compare this subsection to subsections (e) (3) and (e) (7).

granting Georgia Pines' motion for summary judgment based on insufficient service of process.

2. Furthermore, we find that Georgia Pines waived any service of process defense through its own actions. There is no dispute that Georgia Pines had actual knowledge of Summerlin's complaint and made no showing of harm or prejudice resulting from any alleged defect in the service of process.[14] Georgia Pines actively participated in discovery, including answering dozens of interrogatories, producing over one thousand documents, and taking seventeen depositions. In addition, its responses to Summerlin's discovery questions are inadequate and do not show a preservation of the service of process defense.

Summerlin's interrogatories specifically asked Georgia Pines to state the basis upon which it contended there was any deficiency in the service of process claim and to identify who Georgia Pines contended should have been served. Interrogatory Number 1 read as follows:

> Do you contend that any of the named Defendants have been improperly named as parties to this action and/or that improper or incorrect agents for service were utilized to effectuate service upon the Defendants? If your answer to either of these inquiries is "yes," please *provide a detailed explanation* as to why you contend the named Defendants have been improperly named or the agents used for service were improper *and provide the complete and correct name of the entities you contend should have been named and/or served.*

(Emphasis supplied.) In its responses to Summerlin's interrogatories, served approximately one month after its answer, Georgia Pines responded as follows:

> Yes. Lakeview ITR is not an independent legal entity and, therefore, is improperly named as a defendant in this suit.
>
> With regard to service of process, plaintiff failed to execute service as statutorily prescribed by the Georgia Tort Claims Act.

---

[14] See *Ga. Power Co. v. O'Bryant*, 169 Ga. App. 491, 492-493 (313 SE2d 709) (1983).

Georgia Pines did not state anywhere within its interrogatory response that Brogdon was an incorrect or improper agent for service of process, nor did Georgia Pines state that Jones had not been served with the complaint.

In Interrogatory Number 2, Summerlin asked,

*Do you contend that* venue is improper in this Court as to any of the named Defendants, jurisdiction is lacking over any of the named Defendants in this Court, or that *service of process has been deficient on any of the named Defendants in this matter? If so, please describe and state with specificity all factual and legal bases supporting any such contention(s).*

(Emphasis supplied.) Georgia Pines responded, "No." Based on the interrogatory responses, Summerlin could validly conclude that Georgia Pines was not contending Brogdon was an improper agent for service of process. "Any approval by this court of [Georgia Pines'] procedural 'sandbagging' in this case would reintroduce the sporting aspect of pleading the Civil Practice Act was designed to eliminate."[15] The trial court erred in granting Georgia Pines' motion for summary judgment on the basis of insufficient service of process.

*Judgment reversed. Miller and Ellington, JJ., concur.*

DECIDED MARCH 31, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006 — ▮▮▮▮▮

*Conley Griggs, Cale Conley, Richard A. Griggs, C. Frederick Overby,* for appellant.

*Seacrest, Karesh, Tate & Bicknese, Gary L. Seacrest, Annarita M. Busbee, Peter Werdesheim,* for appellee.