## S06G1461. GEORGIA PINES COMMUNITY SERVICE BOARD v. SUMMERLIN et al.

(647 SE2d 566)

SEARS, Chief Justice.

Marilyn Summerlin filed a wrongful death action against the Georgia Pines Community Service Board in the Thomas County Superior Court under the Georgia Tort Claims Act.[1] According to Ms. Summerlin, her eighteen-year-old son died unexpectedly at Georgia Pines, a residential facility for the care and treatment of individuals with mental illness, mental retardation, and addiction operated by the Board.[2] The Board moved for summary judgment on the ground that service of process was defective because the summons and complaint were not handed directly to Robert Henry Jones, Jr., the Director of Georgia Pines. Instead, sheriff's deputies handed the summons and complaint to Connie Brogdon, the personnel manager at Georgia Pines, to give to Jones.

The Superior Court held that service was improper under the service provision of the Georgia Tort Claims Act, OCGA § 50-21-35. The Court of Appeals reversed,[3] holding that service was proper under the service provision of the Civil Practice Act[4] applicable to service of process on a "public body," OCGA § 9-11-4 (e) (5).[5] We granted certiorari to determine whether OCGA § 9-11-4 (e) (5) applies to proceedings brought under the Georgia Tort Claims Act or whether OCGA § 50-21-35 instead provides the exclusive method for service of process on a State entity.[6] We have concluded that OCGA § 9-11-4 (e) (5) applies to claims brought under the Georgia Tort Claims Act and, additionally, that the Court of Appeals correctly held that the Board waived any defense based on defective service of process. We therefore affirm the Court of Appeals' judgment.

1. The Board contends that OCGA § 50-21-35 required Ms. Summerlin to have the summons and complaint handed to Jones

---

[1] OCGA §§ 50-21-20 to 50-21-37. The Georgia Tort Claims Act is the Georgia analog to the Federal Tort Claims Act, 28 USC §§ 1346, 2671-2680. *Edwards v. Dept. of Children & Youth Svcs.*, 271 Ga. 890, 891-892 (525 SE2d 83) (2000). See Mauricia Allen, Note, *The Georgia Tort Claims Act: A License for Negligence in Child Deprivation Cases?*, 18 Ga. St. U. L. Rev. 795, 797-801 (2002) (describing briefly the history of the two acts).

[2] Ms. Summerlin filed suit both individually and in her capacity as administratrix of her son's estate.

[3] *Summerlin v. Ga. Pines Community Svc. Bd.*, 278 Ga. App. 831 (630 SE2d 115) (2006).

[4] OCGA §§ 9-11-1 to 9-11-133.

[5] OCGA § 9-11-4 (e) provides in relevant part as follows:
Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows: . . . (5) . . . If against any other public body or organization subject to an action, to the chief executive officer or clerk thereof.

[6] The Court of Appeals concluded that Brogdon qualified as a "clerk" under OCGA § 9-11-4 (e) (5). We express no opinion on the Court of Appeals' resolution of that question.

personally in order to perfect service of process on the Board. The Board rests its argument on the following portion of OCGA § 50-21-35:

> In all civil actions brought against the state under [the Georgia Tort Claims Act], to perfect service of process the plaintiff must both: (1) cause process to be served upon the chief executive officer of the state government entity involved at his or her usual office address; and (2) cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services at his or her usual office address.

According to the Board, the statutory text specifies not only *who* must be served (i.e., the CEO of the agency sued and the director of the Risk Management Division) and *where* (at their usual office address), but also *how* (by personally handing the summons and complaint to the two designated individuals). This reading would add an element to the statute the General Assembly elected not to include.

In statutes regarding "service of process," the word "service" is a term of art referring to the "formal delivery of a writ, summons, or other legal process."[7] This "formal delivery" may be accomplished by handing the "process" — here, the summons and complaint — to a specific individual. However, service of process may also be accomplished by certified mail, hand delivery to a party's agent, or even publication depending on the circumstances.[8] Thus, to say, as OCGA § 50-21-35 does, that a plaintiff must "cause process to be served upon" the chief executive officer of a State agency and the director of the Risk Management Division to perfect service of process tells us only who must be served in cases arising under the Georgia Tort Claims Act, not how the named individuals must be served. To answer that question, we must look elsewhere.

The Board contends that there is nowhere else to look. According to the Board, the Georgia Tort Claims Act is "a self-contained limitation on the waiver of state sovereign immunity," and courts are thus prohibited from "look[ing] beyond the four corners" of the Georgia Tort Claims Act to find answers to procedural questions. This argument is difficult to sustain in light of our recent unanimous decision in *Camp v. Coweta County*, 280 Ga. 199 (625 SE2d 759) (2006), in which we specifically relied on OCGA § 9-11-15 (a) in holding that

---

[7] Jeremy A. Colby, *You've Got Mail: The Modern Trend Towards Universal Electronic Service of Process*, 51 Buffalo L. Rev. 337, 337, n. 1 (2003) (quoting Black's Law Dictionary 1372 (7th ed. 1999)).

[8] See generally OCGA § 9-11-4; Fed. R. Civ. Proc. 4.

amendments to the complaint are generally allowed prior to the entry of a pretrial order even in Georgia Tort Claims Act cases.[9] Moreover, it contradicts the plain language of several provisions of the Civil Practice Act,[10] including the one governing service of process.[11]

Under the Board's reading of OCGA § 50-21-35, every time a plaintiff sues a State agency under the Georgia Tort Claims Act, the sheriff's department (or some other designated process server) must track down and secure an audience with the agency's CEO so that the summons and complaint can be personally handed to him or her; hand delivery to an administrative assistant or any other agency employee is legally insufficient. The statutory text does not demand such a counterintuitive interpretation.

The Georgia Tort Claims Act is not a civil procedure statute. It touches on procedural matters only incidentally. It makes no provision for the form of pleadings and motions, pretrial discovery, trial practice, or the entry of judgments and summary judgments. Thus, if Georgia Tort Claims Act cases are ever to be litigated, the courts will have to look elsewhere for answers to procedural questions. The place to find these answers is the Civil Practice Act. Accordingly, we hold that the Court of Appeals properly looked to the "public body" service provision of the Civil Practice Act to determine whether Ms. Summerlin was required to have the summons and complaint handed to Jones personally in order to perfect service of process on the Board.

2. In addition, the Board waived any service of process defense it may have had by its own actions during discovery. Although the Board raised the defective service defense in its answer to Ms. Summerlin's complaint, just a few weeks later it submitted woefully inadequate responses to Ms. Summerlin's discovery requests. As the Court of Appeals explained:

---

[9] *Camp*, supra, 280 Ga. at 203 & n. 7.

[10] OCGA §§ 9-11-1 ("This chapter governs the procedure in all courts of record of this state in all actions of a civil nature whether cognizable as cases at law or in equity. . . ."), 9-11-81 ("This chapter shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law. . . ."). See *United States v. Yellow Cab Co.*, 340 U. S. 543, 553 (71 SC 399, 95 LE2d 523) (1951) (recognizing that similar language in the Federal Rules of Civil Procedure renders them applicable to claims arising under the Federal Tort Claims Act).

[11] OCGA § 9-11-4 (j) ("The methods of service provided in this Code section are cumulative and may be utilized with, after, or independently of other methods of service. Whenever a statute provides for another method of service, service may be made under the circumstances and in the manner prescribed by the statute or under any other methods prescribed in this Code section."), (k) ("The methods of service provided in this Code section may be used as alternative methods of service in proceedings in the probate courts and in any other special statutory proceedings and may be used with, after, or independently of the method of service specifically provided for in any such proceeding; and, in any such proceeding, service shall be sufficient when made in accordance with the statutes relating particularly to the proceeding or in accordance with this Code section.").

Summerlin's interrogatories specifically asked Georgia Pines to state the basis upon which it contended there was any deficiency in the service of process claim and to identify who Georgia Pines contended should have been served. Interrogatory Number 1 read as follows:

> Do you contend that any of the named Defendants have been improperly named as parties to this action and/or that improper or incorrect agents for service were utilized to effectuate service upon the Defendants? If your answer to either of these inquiries is "yes," please *provide a detailed explanation* as to why you contend the named Defendants have been improperly named or the agents used for service were improper *and provide the complete and correct name of the entities you contend should have been named and/or served.*

(Emphasis supplied.) In its responses to Summerlin's interrogatories, served approximately one month after its answer, Georgia Pines responded as follows:

> Yes. Lakeview ITR is not an independent legal entity and, therefore, is improperly named as a defendant in this suit.
> With regard to service of process, plaintiff failed to execute service as statutorily prescribed by the Georgia Tort Claims Act.

Georgia Pines did not state anywhere within its interrogatory response that Brogdon was an incorrect or improper agent for service of process, nor did Georgia Pines state that Jones had not been served with the complaint.

In Interrogatory Number 2, Summerlin asked,

> *Do you contend that* venue is improper in this Court as to any of the named Defendants, jurisdiction is lacking over any of the named Defendants in this Court, or that *service of process has been deficient on any of the named Defendants in this matter? If so, please describe and state with specificity all factual and legal bases supporting any such contention(s).*

(Emphasis supplied.) Georgia Pines responded, "No."[12]

The Board's failure to provide any factual basis for its legal conclusion deprived Ms. Summerlin of an opportunity to correct the alleged defect in a timely manner. We agree with the Court of Appeals that "[a]ny approval by this court of [Georgia Pines'] procedural 'sandbagging' in this case would reintroduce the sporting aspect of pleading the Civil Practice Act was designed to eliminate."[13]

The Board argues that in cases arising under the Georgia Tort Claims Act, any defect in service of process deprives the trial court of subject matter jurisdiction and therefore cannot be waived. This argument is meritless. The service of process provision of the Georgia Tort Claims Act is procedural in nature, not jurisdictional.[14] As the United States Supreme Court has explained:

> Service of process, we have come to understand, is properly regarded as a matter discrete from a court's jurisdiction to adjudicate a controversy of a particular kind [i.e., subject matter jurisdiction], or against a particular individual or entity [i.e., personal jurisdiction]. Its essential purpose is auxiliary, a purpose distinct from . . . substantive matters [such as] who may sue, on what claims, for what relief, [and] within what limitations period. Instead, the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.

*Henderson v. United States*, 517 U. S. 654, 671-672 (116 SC 1638, 134 LE2d 880) (1996) (footnotes omitted). There is no dispute that the Board was well aware of Ms. Summerlin's claims even before she filed her complaint and would have had a full and fair opportunity to answer the complaint and present its defenses and objections had the trial court not terminated the proceedings prematurely by granting summary judgment in favor of the Board. Accordingly, we affirm the

---

[12] *Summerlin*, supra, 278 Ga. App. at 835-836.

[13] *Summerlin*, supra, 278 Ga. App. at 836 (quoting *Ga. Power Co. v. O'Bryant*, 169 Ga. App. 491, 495 (313 SE2d 709) (1983)).

[14] See *Henderson v. Dept. of Transp.*, 267 Ga. 90, 90 (475 SE2d 614) (1996) (holding that "the notice and service provisions [of the Georgia Tort Claims Act] are procedural rules that constitutionally may be applied retroactively").

Court of Appeals' holding that the Board waived its defective service of process defense.[15]

*Judgment affirmed. All the Justices concur, except Hines and Melton, JJ., who concur specially.*

MELTON, Justice, concurring specially.

Although I agree that the Georgia Pines Community Service Board waived its service of process defense under the facts of this case, I cannot agree with the majority's broad conclusions regarding the interaction of the Georgia Tort Claims Act (GTCA) and the Civil Practice Act.

1. As an initial matter, the resolution of this case rests solely on the finding that Georgia Pines waived its defective service defense. The majority concedes this fact, finding specifically that it need not consider whether service was properly delivered to Georgia Pines due to its waiver. Accordingly, the entirety of the majority's first division which discusses the imposition of the service requirements of the Civil Practice Act onto the GTCA is dicta only. As such, it is non-binding and lacks precedential authority.

2. Because the majority has chosen to make these findings in dicta, however, I feel that a full response, although it will also be dicta, is required. Pursuant to the Georgia Constitution, the State may waive its sovereign immunity only in the manner set forth in a tort claims act or in another act of the Legislature which expressly provides for and sets forth the extent of such a waiver. 1983 Ga. Const., Art. I, Sec. II, Par. IX (a), (e). Under the GTCA, OCGA § 50-21-20 et seq., the Legislature provided the mechanism by which the State waived its sovereign immunity, allowing civil actions against the State only if the requirements of the GTCA had been first met. Nothing in the GTCA or any other act of the Legislature which expressly waives sovereign immunity allows an action against the State to be maintained after service upon anyone at a state entity "whose duties include keeping records or accounts" rather than the appropriate chief executive officer. Therefore, in this case, where only the personnel manager of Georgia Pines was served, not the chief executive officer, the plaintiff failed to properly perfect service under the GTCA.

---

[15] The special concurrence contends that all of Division 1 is dicta lacking in precedential value. It is not. This case is here on a grant of certiorari. As noted above, we granted certiorari to determine whether the Court of Appeals erred in applying the public body service provision of the Civil Practice Act to decide whether Ms. Summerlin properly served the Board in this case. As a separate, *additional* basis for its decision reversing the trial court's grant of summary judgment to the Board, the Court of Appeals cited the Board's waiver of any defective service of process defense. We affirm the Court of Appeals' decision on both grounds.

(a) The GTCA expressly mandates that its provisions must be strictly construed and limited to their terms. OCGA § 50-21-21 (a) states unequivocally: "[I]t is declared to be the public policy of this state that the state shall only be liable in tort actions *within the limitations of this article* and in accordance with the fair and uniform principles *established in this article.*" (Emphasis supplied.) OCGA § 50-21-21 (c) then provides: "All the provisions of this article should be construed with a view to carry out this expression of the intent of the General Assembly." When analyzing cases such as this, one must remain cognizant of the Legislature's clear intent to strictly limit the waiver of sovereign immunity in accordance with the express terms set forth within the statutory article containing the GTCA. To preserve this intent, one should not resort to the use of statutory authority outside of the GTCA unless it is absolutely necessary to maintain the efficacy of the GTCA.

With regard to the requisite service of process required to bring suit under the GTCA, "it is apparent that the [L]egislature intended to require the plaintiff to serve process . . . on . . . two people." *Camp v. Coweta County*, 280 Ga. 199, 200 (1) (625 SE2d 759) (2006). OCGA § 50-21-35 provides:

> In all civil actions brought by the state under this article, to perfect service of process the plaintiff must both: (1) cause process to be served upon the chief executive officer of the state government entity involved at his or her usual office address; and (2) cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services at his or her usual address.

Before a plaintiff may bring an action under the GTCA, strict compliance with the explicit terms of this provision is required, and this provision explicitly requires service upon two people, the director of the Risk Management Division and the chief executive officer of the state entity sought to be sued. This provision is unambiguous, and can be followed according to its own terms, without resort to general statutes outside of the GTCA. As such, service upon individuals other than the two explicitly named in OCGA § 50-21-35 cannot satisfy the service requirement. For this reason, under OCGA § 50-21-35, service upon the deputy administrator of the Risk Management Division rather than the director has been deemed insufficient service. *Christensen v. State*, 219 Ga. App. 10 (1) (464 SE2d 14) (1995), disapproved on other grounds by *Brantley v. Dept. of Human Resources*, 271 Ga. 679 (523 SE2d 571) (1999).

In this case, although the director of the Risk Management Division was properly served, the chief executive officer of Georgia

Pines was not. The personnel manager of Georgia Pines was the only person at Georgia Pines who received service, and there is simply no question that she was not one of the two people whom OCGA § 50-21-35 requires to be served. Given the explicit requirements of the GTCA, there is simply no need to look outside its provisions for its proper enforcement, and it is improper to do so. The chief executive officer of Georgia Pines was not personally served as required. Georgia Pines, however, waived its defense based on this defective service.

Our holding in *Camp v. Coweta County*, supra, does not provide any basis for a different outcome in this case. In *Camp*, we found that "[b]ecause there are no specific proscriptions against amendments to cure a defect in the certification requirement under OCGA § 50-21-35, an amendment should generally be allowed prior to the entry of a pretrial order. . . ." Id. at 203 (3). Because the GTCA was silent regarding whether a complaint could be amended in this situation, it was absolutely necessary to look to the general provisions of the Civil Practice Act, namely OCGA § 9-11-15, to determine whether such an amendment would be allowable. Unlike the situation in *Camp* where we had no choice but to look outside the GTCA because its provisions failed to speak to the issue at hand, in this case, the terms of the GTCA are explicit, unambiguous, and clearly sufficient enough to determine the propriety of service. Quite simply, the GTCA mandates that the director of the Risk Management Division and the chief executive officer of the state entity being sued must be served. We should not alter, manipulate, or extend this simple mandate through application of the more liberal service provisions of the Civil Practice Act. As it states, itself, the GTCA was intended to stand alone. In this case, importing provisions of the Civil Practice Act into the GTCA in order to interpret an unambiguous service requirement violates this legislative intention.

(b) Even if it were applicable to the case at hand, the statutory provision for service upon "public bodies" under the Civil Practice Act would not alter the result in this case. OCGA § 9-11-4 (e) provides, in relevant part:

> Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows: . . . (5) If against a county, municipality, city, or town, to the chairman of the board of commissioners, president of the council of trustees, mayor or city manager of the city or to an agent authorized by appointment to receive service of process. If against any other public body or organization subject to an action, to the chief executive officer or clerk thereof.

This provision, properly construed in context, does not allow service upon any generic clerk of a public body. To the contrary, just as it allows service on "the" chief executive officer of a public body, it allows service on "the" clerk of a public body. Public bodies such as cities, counties, and municipalities often have both a mayor or chief operating officer and an official clerk who acts on the public body's behalf. In both cases, a single individual holds the office in question, and service upon either one ensures notice to that public body. See, e.g., *Foskey v. Vidalia City School*, 258 Ga. App. 298 (574 SE2d 367) (2002) (service on the Vidalia City School District had to be perfected on the chief executive officer or *the* clerk of the District).

Contrary to the Court of Appeals' analysis, I do not believe that the Legislature intended that service on a public body could be perfected by giving process to any employee who fits the generic definition of clerk, i.e., any person whose duties include keeping records or filing. This interpretation simply does not fit within the clear context of the statute as written. For example, service on counties, cities, and the like must be made on specific individuals holding official offices: the chairman of the board, the president of the trustees, the mayor, etc. As with these other public bodies, the Legislature intended for service to be made on specific individuals with official offices and duties, not random employees who have certain basic administrative duties. Service on such random employees would deter the goal of the statute to ensure that the head of the public body receives actual notice of a pending action.

Therefore, for all of the reasons set forth above, I cannot concur in the majority's conclusion that, in enforcing the GTCA, "courts will have to look elsewhere for answers to procedural questions." Such a wholesale imposition of external statutes and provisions onto the framework of the GTCA simply does not comport with the legislative intent that the GTCA be allowed to stand on its own terms wherever possible.

I am authorized to state that Justice Hines joins in this special concurrence.

DECIDED JUNE 29, 2007 —
RECONSIDERATION DENIED JULY 27, 2007.

*Seacrest, Karesh, Tate & Bicknese, Gary L. Seacrest, Annarita M. Busbee*, for appellant.

*Conley Griggs, Cale Conley, Richard A. Griggs, C. Frederick Overby*, for appellees.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Jennifer L. Dalton, Assistant Attorney General,* amici curiae.