**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 4, 2025

S24A1024.  WARBLER INVESTMENTS, LLC v. CITY OF SOCIAL CIRCLE.

PINSON, Justice.

In 2020, the people of Georgia ratified an amendment to Article I, Section II, Paragraph V (b) (1) of the Georgia Constitution that provides a waiver of sovereign immunity for actions seeking declaratory relief from certain unlawful acts of the State or a local government. That amendment also added a procedural requirement: an action brought "pursuant to" this paragraph must be brought against and in the name of only the State or the relevant local government, or it "shall be dismissed." The question presented in this case is whether a complaint that does not comply with that naming requirement may be cured by dropping or adding parties to the action, thus avoiding dismissal. For the reasons set out below, we conclude that

it may: nothing in Paragraph V prevents the parties or the court from using the procedure established by our Civil Practice Act, OCGA § 9-11-21, to drop or add parties and thereby cure a failure to comply with Paragraph V's naming requirement.

1. Article I, Section II, Paragraph V (b) (1) of the Georgia Constitution provides a waiver of sovereign immunity for certain claims against the State and local governments. That provision declares that "[s]overeign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of" the State, local governments, or their respective subdivisions, officers, or employees that are "outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States." It then "further waive[s]" sovereign immunity to allow a court that awards such declaratory relief to then issue injunctive relief. Id.

The subparagraph that follows this waiver of sovereign immunity then imposes a procedural requirement. Subparagraph (b) (2) declares that "[a]ctions filed pursuant to this Paragraph against"

2

any of the entities whose sovereign immunity was waived in subparagraph (b) (1) "shall be brought exclusively against the state and in the name of the State of Georgia" (if the action was against a state entity, officer, or employee) or against and "in the name of" the "county, consolidated government, or municipality" (if the action was against a local government entity, officer, or employee). Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (2). And the provision explains the consequences for failing to comply with this requirement: "Actions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed." Id. That said, the following subparagraph provides that "[t]he General Assembly by an Act may limit the power or duty of a court under this Paragraph to dismiss any action or deny relief." Id. at Par. V (b) (3).

2. In July 2021, Warbler sued the City of Social Circle, its mayor, and three City Council members. The complaint named the mayor and each of the City Council members in their individual capacities, and it alleged that those defendants unlawfully rezoned a

3

property that Warbler owned and sought to develop. According to the complaint, this rezoning removed the property from a "Planned Unit Development" district, which allowed for both commercial and residential structures, and "downzone[d]" it to "R-15," a medium-density single-family residential district. Warbler also alleged violations of the Open Records Act, OCGA § 50-18-70 *et seq.*, and it sought relief under that Act as well as declaratory and injunctive relief, a writ of mandamus, and a writ of certiorari from the trial court under OCGA § 5-4-1 *et seq.* (a provision that has since been repealed, see Ga. L. 2022, p. 767, § 1-2). The complaint alleged that the trial court had subject matter jurisdiction over Warbler's claims under Article VI, Section IV, Paragraph I of the Georgia Constitution and various statutes related to the specific relief sought.[1] It did not mention Paragraph V or its waiver of sovereign immunity.

In August 2021, the defendants moved to dismiss all the claims

---

[1] Article VI, Section IV, Paragraph I provides in relevant part that "[t]he superior courts shall have jurisdiction in all cases, except as otherwise provided in this Constitution." Ga. Const. of 1983, Art. VI, Sec. IV, Par. I.

4

other than one under the Open Records Act because they sought declaratory relief against and named "individual members of the city council in their individual capacity" in violation of Article I, Section II, Paragraph V (b) (2) of the Georgia Constitution. In response, Warbler contended that its claims for declaratory, injunctive, and mandamus relief should have been "pleaded against the City only," and it noted that it was moving to amend the complaint "by dropping the Mayor and City Council Members as parties." Warbler contended that its claims against the City could then proceed because Paragraph V (b) (1) waived the City's sovereign immunity for those claims.

As promised, Warbler moved under OCGA § 9-11-21 for leave to amend its complaint by dropping the individual defendants from the suit.[2] The defendants consented to the amendment, and the trial court accordingly granted Warbler's motion. Warbler then filed an amended complaint naming only the City.

---

[2] OCGA § 9-11-21 provides in relevant part that "[p]arties may be dropped or added by order of the court on motion of any party . . . at any stage of the action and on such terms as are just."

5

While Warbler's amended complaint against the City was still pending, however, this Court issued its decision in *State v. SASS Group, LLC*, 315 Ga. 893 (885 SE2d 761) (2023). There, we held that when a plaintiff brings claims that "required Paragraph V's waiver of sovereign immunity" in an action that names defendants other than the State or the relevant local government, "the entire case must be dismissed." Id. at 904 (II) (d).

In light of *SASS Group*, the City renewed its motion to dismiss. The City argued that under *SASS Group*, "naming individuals is a fatal flaw that cannot be amended and cannot be waived," and so the entire action had to be dismissed.

After more briefing and a hearing, the trial court granted the City's renewed motion and dismissed the case. The trial court concluded that Warbler's claims for declaratory relief "f[e]ll under" Paragraph V, and that naming the individual defendants in the initial complaint violated the naming requirement of Paragraph V (b) (2), so the entire action had to be dismissed under *SASS Group*, notwithstanding that the court had granted Warbler's motion to drop the

6

individual defendants from the lawsuit. The trial court reasoned that Warbler's amendment could not cure the original defect because the City's consent to the filing of the amended complaint was itself an unauthorized waiver of the City's sovereign immunity.

We granted Warbler's application for discretionary appeal to consider whether failing to comply with the naming requirement of subparagraph (b) (2) requires immediate dismissal of the action, or if that procedural defect may be cured by dropping from the complaint the defendants who should not have been named.[3]

3. To answer this question, we start with the provision of the Civil Practice Act that Warbler relied on to amend its complaint. That provision, OCGA § 9-11-21, explains that "[m]isjoinder of parties is not ground for dismissal of an action." And it provides a procedural mechanism for dropping or adding parties: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are

---

[3] We assume without deciding that Warbler's action was "filed pursuant to" Paragraph V, thus triggering its naming requirement.

just." Id. In an ordinary civil action, any party (usually the plaintiff) can use this procedure to add or drop parties at any stage of the action with the court's leave.

This established statutory procedure is available in every civil action by default. The procedure is part of our Civil Practice Act, so it is available in "all courts of record of this state," and in "all actions of a civil nature whether cognizable as cases at law or in equity," subject to a limited exception when "special statutory proceedings" prescribe procedures in express conflict with the Act. OCGA § 9-11-1, 9-11-81.[4] Moreover, we presume that our laws are enacted (or in the case of a constitutional amendment, ratified) with full knowledge of existing laws, including OCGA § 9-11-21's established procedure for dropping or adding parties in any civil action. See, e.g.,

---

[4] Code section 9-11-81 provides that the Civil Practice Act applies to "all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law." Id. It goes on to say that "in any event, the provisions of th[e Civil Practice Act] governing the sufficiency of pleadings, defenses, amendments, counterclaims, cross-claims, third-party practice, joinder of parties and causes, making parties, discovery and depositions, interpleader, intervention, evidence, motions, summary judgment, relief from judgments, and the effect of judgments shall apply to all such proceedings." Id.

8

*Elliott v. State*, 305 Ga. 179, 182 (II) (824 SE2d 265) (2019) ("A constitutional provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them. Constitutions, like statutes, are properly to be expounded in the light of conditions existing at the time of their adoption." (quoting *Clarke v. Johnson*, 199 Ga. 163, 166 (33 SE2d 425) (1945)) (punctuation omitted)).

Because the Civil Practice Act makes its procedure for adding or dropping parties available in every civil action, the question here is whether something unique to Paragraph V conflicts with the General Assembly's broad grant of that procedure in a way that prevents a plaintiff or court from using it to cure a failure to comply with Paragraph V's naming requirement. After all, Paragraph V waives sovereign immunity for actions for declaratory relief (and later, injunctive relief): civil actions to which the Civil Practice Act, including OCGA § 9-11-21, applies. See OCGA § 9-11-1 ("This chapter governs . . . in all actions of a civil nature whether cognizable as cases at law or in equity."); OCGA § 9-11-2 (providing that the only form of action

9

is a "civil action"). So if that established procedure is not available in such actions, it can only be because Paragraph V has displaced it somehow. A couple of arguments to that effect have developed in the course of this litigation, so we turn to those now.

(a) One of those arguments has to do with Paragraph V's grant of a waiver of sovereign immunity. We have held that if sovereign immunity bars an action, the court in which that action has been filed lacks subject-matter jurisdiction, meaning that the court has no power to reach the merits of the action. *McConnell v. Dep't of Labor*, 302 Ga. 18, 19 (805 SE2d 79) (2017) ("[T]he applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred." (footnote omitted)). Thus, if failing to comply with the naming requirement of Paragraph V means that sovereign immunity bars an action brought pursuant to that paragraph, then a court might simply lack the power to do anything but dismiss the action.

This argument fails at its premise. Putting aside the separate

10

question whether a court without subject-matter jurisdiction can do anything other than dismiss a case,[5] it is plain from the language of Paragraph V that a failure to comply with its naming requirement does not deprive the court of subject-matter jurisdiction. Complying with that requirement, found in subparagraph (b) (2), is not a prerequisite for relying on the waiver of sovereign immunity. That waiver is set out separately in subparagraph (b) (1), and its only conditions are stated plainly: "[s]overeign immunity is hereby waived" for an action if it is (1) "in the superior court" and (2) "seeking declaratory relief from acts of" the State or a local government "outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States," as long as the acts in question are (3) "past, current, [or] prospective acts which occur[red] on or after January 1, 2021." That's it: that's the list. Nothing in this subparagraph establishing the waiver of

---

[5] Some of us doubt whether the only action a court can take when it lacks subject-matter jurisdiction is to dismiss a case. But we need not resolve that question here because, as explained below, the trial court had subject-matter jurisdiction here under Paragraph V's waiver of sovereign immunity.

sovereign immunity suggests that any other condition must be met before the waiver applies. And nothing in subparagraph (b) (2), which sets out the naming requirement, gives any indication that meeting that requirement is a condition or prerequisite for triggering the waiver of sovereign immunity, either. The naming requirement is phrased in mandatory terms — the complaint "shall" be dismissed. *Hall County Bd. of Tax Assessors v. Westrec Props.*, 303 Ga. 69, 75 (3) (809 SE2d 780) (2018) ("The word 'shall' is generally construed as a word of command." (citation and punctuation omitted)). But we do not see how to read that requirement as also being a prerequisite to the waiver of sovereign immunity granted by the preceding subparagraph. It does not say, for instance, "notwithstanding subparagraph (b) (1), sovereign immunity is not waived if" an action fails to comply with the naming requirement, or anything like the kind of language that the General Assembly has used before to put conditions on waivers of sovereign immunity. Compare OCGA § 50-21-23 (a) ("[S]overeign immunity is waived subject to all exceptions and limitations set forth in this article."); OCGA § 50-21-24 (listing

12

circumstances where immunity is not waived).

All of this means that if a complaint does not meet the naming requirement of subparagraph (b) (2), that failure is not a jurisdictional bar to hearing the case. Sovereign immunity has already been waived. Instead, this naming requirement is a procedural rule, and failing to follow it is an ordinary procedural defect that carries a consequence of dismissal. Such mandatory-but-non-jurisdictional procedural rules are not uncommon in our law. See, e.g., *Ga. Pines Cmty. Serv. Bd. v. Summerlin*, 282 Ga. 339, 339-340 (1), 343 (2) (647 SE2d 566) (2007) (requirement in Georgia Tort Claims Act that plaintiff "must" effect service of process on specific government officials is procedural, not jurisdictional, and so plaintiff's failure to comply does not affect the Act's waiver of sovereign immunity); *Stubbs v. Hall*, 308 Ga. 354, 362 (3) (c) (840 SE2d 407) (2020) (the requirement to file a notice of intent to apply for certiorari is procedural, not jurisdictional, and so dismissal is not mandatory). In short, when an action does not comply with subparagraph (b) (2)'s naming requirement, it does not deprive the trial court of subject

13

matter jurisdiction or leave it powerless to act in the case.[6]

For this same reason, we must reject the trial court's basis for dismissing Warbler's action. The trial court reasoned that Warbler's amended complaint could not cure the alleged naming defect in its original complaint because the City had consented to Warbler's request to amend its complaint to drop the individual defendants, but "sovereign immunity can only be waived by an Act of the General Assembly." As we have just explained, however, that premise — that failure to comply with that subparagraph's naming requirement meant the action was barred by sovereign immunity — is mistaken, and so the trial court's basis for dismissing the complaint was too.

(b) The other arguments that Paragraph V prevents adding or dropping parties to cure a failure to comply with its naming requirement are arguments that Paragraph V's language conflicts with and thus displaces OCGA § 9-11-21's procedure that would allow such a

---

[6] *South River Watershed Alliance v. DeKalb County*, 373 Ga. App. 285 (908 SE2d 204) (2024), is overruled to the extent that it holds sovereign immunity bars an action filed pursuant to Paragraph V if the naming requirement is not met.

14

curative amendment in these circumstances — that is, a partial repeal by implication. These arguments focus on the language of subparagraph (b) (2), which says that "[a]ctions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed." Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (2). We take these two arguments in turn.

(i) The first of these arguments depends on the words "filed" and "brought." Subparagraph (b) (2) says that "[a]ctions filed pursuant to this Paragraph . . . shall be brought exclusively" against the relevant governmental entity, and actions that do not comply with this naming requirement "shall be dismissed." Id. So, the argument goes, if an action does not comply with the naming requirement when it is "filed" or "brought," it must be dismissed. And amending a complaint later to add or drop parties cannot change the fact that the naming requirement was not met at the time of the initial filing.

The problem with this argument is that the supposed timing requirement — that an action must be immediately dismissed if it

15

names the wrong parties at the time the action is filed or brought —

does not appear anywhere in the text. The text does not say, for in-

stance, that an action must be dismissed if it does not comply with

the naming requirement "at the time of bringing the action," or "at

the time of filing." Compare, e.g., OCGA § 15-6-77 (d) ("[A]ll sums

specified in this Code section shall be paid to the clerk at the time of

filing."); OCGA § 51-14-9 (a) (requiring that a plaintiff in an asbestos

or silica claim be a resident of Georgia "at the time of filing"); OCGA

§ 14-11-801 (4) (requiring that a plaintiff in an LLC derivative action

be a member "at the time of bringing the action"); OCGA § 7-1-441

(a) (requiring the plaintiff allege "that the plaintiff is a shareholder

of record at the time of bringing the action"); OCGA § 53-2-7 (d) (ad-

ministrator must show that property "is held by the defendant at

the time of bringing the action"). Instead, subparagraph (b) (2)

simply uses the phrase "shall be brought" to direct the plaintiff to

sue only certain parties (that is, to set out its naming requirement),

and it identifies "[a]ctions filed pursuant to this Paragraph" as the

category of actions that must meet the naming requirement (and

16

that "shall be dismissed" if they do not). This language tells us exactly nothing about whether a failure to comply with the naming requirement in an initial complaint can be cured by adding or dropping parties in a later amended complaint. And if this language does not conflict with or displace OCGA § 9-11-21's procedure for adding or dropping parties, it remains available for that purpose. See OCGA § 9-11-1; *Sutton v. Garmon*, 245 Ga. 685, 687 (1) (266 SE2d 497) (1980) (stating that an implied repeal of an earlier statute only occurs when provisions "are clearly and indubitably contradictory, when they are in irreconcilable conflict with each other, and when they can not [sic] reasonably stand together").[7]

(ii) The other argument that the language of Paragraph V dis-

---

[7] It is also worth noting that under the dissent's contrary view — where compliance with the naming requirement is ascertained only "at the time of filing" the action — it would seem that a plaintiff would be free to initially name exclusively the State or local government, thus complying with the naming requirement, and then amend its complaint to add any number of other parties without consequence. To the extent that the aim of that naming requirement is to prevent individuals from being named as defendants in actions brought pursuant to Paragraph V, see *SASS Group*, 315 Ga. at 894, the dissent's construction would appear to frustrate that aim entirely.

17

places OCGA § 9-11-21's established procedure for adding or dropping parties starts with subparagraph (b) (2)'s statement that an "action filed pursuant to" Paragraph V that does not meet the naming requirement "shall be dismissed." If naming the wrong parties counts as a kind of "misjoinder," then that dismissal language appears to conflict with OCGA § 9-11-21's statement that "[m]isjoinder of parties is *not* ground for dismissal of an action." Id. (emphasis added).

But even assuming that the dismissal language of subparagraph (b) (2) conflicts with that sentence of OCGA § 9-11-21 and thus repeals it by implication as applied to actions filed pursuant to Paragraph V, that conflict does not bleed into OCGA § 9-11-21's procedure for adding or dropping parties.[8] Repeals by implication are "not favored under Georgia law," *GeorgiaCarry.Org, Inc. v. Code Revision Comm'n,* 299 Ga. 896, 899 (2) (793 SE2d 35) (2016), and any such

---

[8] We assume without deciding that not complying with Paragraph V's naming requirement is a kind of "misjoinder."

implied repeal is "measured by the extent of the conflict or inconsistency between the acts." *Pickett v. Bank of Ellijay*, 182 Ga. 540, 542 (186 SE 426) (1936). See also *EC Term of Years Trust v. United States*, 550 U.S. 429, 435 (III) (127 SCt 1763, 167 LE2d 729) (2007) ("Where provisions . . . are in irreconcilable conflict, the later act *to the extent of the conflict* constitutes an implied repeal." (cleaned up) (emphasis added)). Within OCGA § 9-11-21, the procedure for dropping or adding parties is set out in a separate sentence after the one that precludes dismissal for misjoinder. See OCGA § 9-11-21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."). And nothing in Paragraph V indicates that parties may *not* be dropped or added by using this procedure. Absent any language in Paragraph V in irreconcilable conflict with that established procedure, it remains undisturbed and available.

Were this conclusion in any doubt, "basic" canons of construction tell us to read our laws (statutes and constitutional provisions alike) (1) together, and (2) in harmony whenever possible. *Camden*

19

*County v. Sweatt*, 315 Ga. 498, 509 (2) (b) (883 SE2d 827) (2023) ("It is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the drafters intended that any part would be without meaning." (cleaned up)). So even if it were possible to read the dismissal language of subparagraph (b) (2) to conflict with OCGA § 9-11-21's procedure for adding or dropping parties, our canons of construction cut against that reading in the face of a reasonable alternative reading: that dismissal is a consequence of failing to comply with the naming requirement of subparagraph (b) (2), but that OCGA § 9-11-21's procedure may be used to cure such a defect. Put simply, if "an action filed pursuant to" Paragraph V does not comply with its naming requirement, dismissal is required, but such a defect may be cured, and dismissal avoided, by way of the established procedure for dropping or adding parties that is set out in OCGA § 9-11-21.

The City contends that our decision in *SASS Group*, 315 Ga. 893, supports the contrary view that an action that does not comply

20

with Paragraph V's naming requirement must be dismissed. But as the City concedes, *SASS Group* did not address this question. That decision addressed only whether the entire action must be dismissed under subparagraph (b) (2) if the naming requirement applies to the action and is not met. *SASS Group*, 313 Ga. at 894 (holding that naming a defendant not specifically authorized by Paragraph V "requires that the entire suit be dismissed"). *SASS Group* did not address the follow-up question we address today — that is, whether the failure to comply with the naming requirement, which would require dismissal of the entire action under *SASS Group*, may be cured by dropping or adding parties to the action. We hold that it may.

(c) In light of this conclusion, the trial court erred in dismissing this action on the basis that it was barred by sovereign immunity. Warbler's failure to comply with the naming requirement of subparagraph (b) (2) did not affect the waiver of sovereign immunity granted by Paragraph V. And once Warbler filed its amended complaint, which complied with the naming requirement, dismissal was

21

no longer required under subparagraph (b) (2).

*Judgment reversed and case remanded. All the Justices concur, except Ellington, LaGrua, and Colvin, JJ., who dissent.*

COLVIN, Justice, dissenting.

Because the plain language of Paragraph V (b) (2) requires that "[a]ctions" that fail to comply with its requirements at the time of filing "shall be dismissed," noncompliance with these requirements may not be cured by amendment, as the majority opinion holds. Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (2). I therefore respectfully dissent.

1. (a) Paragraph V (b) (2) contains naming requirements, as expressed in its first two sentences, and a dismissal provision, as expressed in its third and final sentence. See id. Read together, Paragraph V (b) (2)'s first two sentences provide that "[a]ctions filed pursuant to this Paragraph" against State or local governmental entities and individuals "shall be brought exclusively against . . . and in the name of" the State or local government from which relief is sought. Id. These naming provisions describe the parties against whom an "[a]ction[ ] filed pursuant to this Paragraph" may be "brought" (i.e., the State or local government) and how such actions must be brought against those parties (i.e., "exclusively").

23

Paragraph V (b) (2)'s dismissal provision, in turn, provides that "[a]ctions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity *other than as expressly authorized* under this Paragraph shall be dismissed." Id. (emphasis supplied). This provision mandates the dismissal of actions that are filed naming an unauthorized defendant *and* actions that are filed naming an authorized defendant in an unauthorized manner.

The phrase "as expressly authorized" links Paragraph V (b) (2)'s naming requirements with its dismissal provision. Id. Paragraph V (b) (2)'s first two sentences collectively describe the class of cases that name defendants as "authorized." And Paragraph V (b) (2)'s third sentence mandates dismissal of any action not within that class. There is no daylight between these provisions: either an action is filed naming only authorized defendants in an authorized manner, or it is not, and if it is not, the action "*shall be dismissed.*" Id. (emphasis supplied).

(b) The majority opinion challenges this reading of Paragraph V (b) (2) with two arguments. First, it argues that a

24

party who files an action naming an unauthorized defendant may cure this defect by moving to drop the party under OCGA § 9-11-21. Second, the majority argues that I have incorrectly read a timing requirement into Paragraph V (b) (2)'s text. I address each argument in turn.

(i) First, the majority opinion argues that a party who files an action pursuant to Paragraph V that was *not* "brought exclusively" against an authorized defendant may avoid dismissal by moving under OCGA § 9-11-21 for a court order permitting the litigant to file an amended pleading that drops the unauthorized defendants. This argument begins with the premise that dismissal is only required for "[a]ctions filed pursuant to this Paragraph naming" an unauthorized party "as a defendant[.]" Because a pleading which has been amended to exclude unauthorized parties is no longer an action "naming" an unauthorized defendant, so the argument goes, the action need not be dismissed. Thus, in the majority opinion's view, Paragraph V (b) (2) permits a litigant to violate the constitutional rule announced there but to avoid the sanction

25

prescribed for such violation by amending its pleading.

The majority opinion's argument is flawed, however. As explained above, Paragraph V (b) (2)'s dismissal provision provides that litigants must not only name the right type of defendants, but that they must name such defendants in the manner "expressly authorized" by Paragraph V (b) (2)'s naming provisions. Those provisions require that "[a]ctions filed pursuant to" Paragraph V be "brought exclusively against . . . and in the name of" the State or local government. And because an action is "filed" or "brought" only once,[9] the action must name the State or local government "exclusively" at the time of filing in order to name such a defendant "as expressly authorized[.]" Accordingly, an action that is not brought in this way cannot be cured by amendment. Put simply, to determine whether an action filed under Paragraph V should be dismissed under Paragraph V (b) (2), a trial court need only look at the defendants named at the time the suit was brought. If the suit

---

[9] An "action" begins when the original complaint is filed, see OCGA § 9-11-3 (a), and it remains the same "action" even if the complaint is amended, see OCGA § 9-11-15 (a).

26

was not brought exclusively against the State or the appropriate local government, the suit must be dismissed.

(ii) In its second argument, the majority opinion claims that the timing requirement I contend Paragraph V (b) contains is not found in its text. In support of its argument, the majority opinion cites numerous statutory provisions containing express timing requirements and argues that because similar language is not found in Paragraph V (b) (2), Paragraph V (b) (2) lacks such a timing requirement. See Maj. Op. at __ (3) (b) (i) (citing OCGA § 15-6-77 (d); § 51-14-9 (a); § 14-11-801 (4); § 7-1-441 (a); § 53-2-7 (d)). The majority opinion further contends that the text of Paragraph V (b) (2)'s naming provisions — including the language requiring that actions be "brought exclusively" against and in the name of the State or local government — tell us nothing about whether a defective action can be cured by amendment.

But this is simply not so. As we have already explained, the phrase "as expressly authorized" links Paragraph V (b) (2)'s dismissal provisions back to its naming provisions. And the timing

27

requirement with which the majority opinion takes issue is the necessary consequence of those naming provisions: it arises from the fact that a suit is "filed" and "brought" only once.

It follows that a Paragraph V action against a State or local government which improperly names other defendants cannot be cured by amendment. Though an amendment could drop the improperly joined parties, it could never change the fact that the action was not "brought exclusively" against the State or local government. And because the suit was not brought exclusively in this manner, the State or local government is not named as expressly authorized by Paragraph V (2) (b) (2), even after amendment, and the action must therefore "be dismissed."

2. Warbler Investments, LLC ("Warbler") initially filed suit against the City of Social Circle (the "City") as well as the City's mayor and three members of its City council. As noted by the majority opinion, Warbler later amended its suit by dropping each of the individual defendants. See Maj. Op. at __ (2). Though the suit, as amended, named only the City, the amendment did not change

28

the fact that Warbler failed to bring its suit exclusively against the City in the first instance. And because the action was not "brought exclusively" against the City at the time it was filed, the City was not named "as expressly authorized[.]" See Paragraph V (b) (2). Accordingly, the trial court was required to dismiss the action, which it ultimately did, albeit for different reasons than those expressed here.

Because my views would compel me to affirm the trial court's dismissal, I respectfully dissent from the majority opinion.[10] I am authorized to state that Justice Ellington and Justice LaGrua join this dissent.

---

[10] As explained by the majority opinion, Paragraph V waives sovereign immunity for claims brought under that Paragraph. Accordingly, we need not reach our second certiorari question, which asked whether a governmental defendant's consent to the filing of an amended complaint waives sovereign immunity.