S05G0892. CAMP v. COWETA COUNTY et al.
(625 SE2d 759)

SEARS, Chief Justice.

After suffering an injury while on a work detail at the Coweta County Fairgrounds, inmate David Lamar Camp brought suit in the Coweta County Superior Court against the Georgia Department of Corrections, Coweta County, and other parties. The superior court

---

dismissed the suit because Camp failed to mail a copy of the complaint to the Attorney General, as required by OCGA § 50-21-35. The Court of Appeals affirmed.[1] We granted certiorari in this case to determine whether compliance with that requirement is essential to perfecting service and whether an initial failure to comply can be cured by a late mailing and the filing of an amended complaint.

Because the statute clearly differentiates between the mailing requirement and the requirements for service of process, we hold that mailing a copy of the complaint to the Attorney General is not necessary to perfect service. Also, because no statutory authority prohibits a late mailing or the filing of an amended complaint, we hold that a plaintiff should be allowed to cure a defect in his compliance with the mailing requirement so long as the delay in providing a copy of the complaint to the Attorney General has not caused prejudice to the State.

As part of the Georgia Tort Claims Act (GTCA), OCGA § 50-21-35 imposes a number of requirements upon litigants who sue the State and its agencies. Specifically, OCGA § 50-21-35 states:

> In all civil actions brought against the state under this article, to perfect service of process the plaintiff must both: (1) cause process to be served upon the chief executive officer of the state government entity involved at his or her usual office address; and (2) cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services at his or her usual address. The time for the state to file an answer shall not begin until process has been served upon all required persons. A copy of the complaint, showing the date of filing, shall also be mailed to the Attorney General at his or her usual office address, by certified mail or statutory overnight delivery, return receipt requested and there shall be attached to the complaint a certificate that this requirement has been met.

1. A plain reading of the statute shows that the legislature intended to require the plaintiff to accomplish tasks related to two categories of persons. The first category of persons, those upon whom process must be served, is covered in the first two sentences. The chief executive officer of the government entity involved, as well as the director of the Risk Management Division of the Department of Administrative Services, must be served with process, and the State's duty to respond is not triggered until that is accomplished. When the

---

[1] *Camp v. Coweta County*, 271 Ga. App. 349 (609 SE2d 695) (2005).

statute is properly strictly construed, it is apparent that the legislature intended to require the plaintiff to serve process only on these two people.

The Attorney General, on the other hand, constitutes the other category of persons, those who must be mailed a copy of the complaint but are not entitled to the full service of process. The third sentence of the statute specifically requires the plaintiff only to mail a copy of the complaint to the Attorney General, not to formally serve the Attorney General with process,[2] and to attach to the complaint a certificate showing that this requirement has been met. Plainly, under a strict construction of the statute, the mailing requirement and the service of process requirement are two distinct and independent obligations.

The Court of Appeals clearly erred, therefore, by using a truncated quotation of the statute to equate the mailing requirement with the service of process requirement.[3] The legislature clearly did not intend to require the plaintiff to serve the Attorney General as a means of perfecting service. Service is perfected upon the proper service of the two "required persons," the chief executive of the State agency involved and the director of the Risk Management Division of the Department of Administrative Services.[4] The mailing of the complaint to the Attorney General is purely a notice provision, as the legislature intended the Attorney General to receive prompt notice of complaints filed against the State.

Camp accomplished his duties with respect to the service of process, but initially failed to mail a copy of the complaint to the Attorney General or certify his satisfaction of that duty in his complaint. After the State filed a motion to dismiss his complaint as a consequence of that omission, Camp attempted to cure the defect by mailing a copy of the complaint to the Attorney General and filing an amended complaint certifying the completion of that task. The trial court rejected his attempts and dismissed his complaint. Camp

---

[2] Mailing a copy of petition or complaint does not constitute service of process. OCGA § 9-11-4; *Stallings v. Stallings*, 127 Ga. 464, 468 (56 SE 469) (1907); *Gormong v. Cleveland Elec. Co.*, 180 Ga. App. 481 (349 SE2d 500) (1986).

[3] The Court of Appeals quoted the statute as follows:
[i]n all civil actions brought against the State under this article, *to perfect service . . .*
[a] copy of the complaint, showing the date of filing, shall also be mailed to the Attorney General. . . .
(Emphasis in original.) *Camp*, 271 Ga. App. at 352. See also *Dept. of Human Resources v. Nation*, 265 Ga. App. 434 (594 SE2d 383) (2004).

[4] *Curry v. Ga. Dept. of Corrections*, 232 Ga. App. 703, 703 (503 SE2d 597) (1998) (holding that in order to perfect service, plaintiff must serve only the chief executive officer of the involved State entity and the director of the Risk Management Division of the Department of Administrative Services).

argues that the trial court should have accepted his efforts to cure his initial failure to satisfy OCGA § 50-21-35.

2. Given that the mailing requirement is not required to perfect service, we must determine whether and when the failure to comply with the mailing requirement in a timely manner requires the dismissal of the plaintiff's complaint. We hold that the failure to satisfy the mailing requirement in a timely manner does not automatically require the dismissal of the complaint, but, instead, the trial court should determine whether the State has been prejudiced by the lack of timely notice.

The statute itself does not contain any specific time limit for providing notice, nor does it delineate any consequences for the failure to provide it. When the legislature has deemed specific time limits or consequences for failing to comply to be appropriate, it has done so specifically. For example, with respect to the closely-related duty to provide ante litem notice, the legislature chose to specifically impose a 30-day limit on the plaintiff's right to cure any defects.[5] In addition, if a plaintiff in a professional malpractice case fails to attach the required affidavit to the complaint, OCGA § 9-11-9.1 (b) provides that the complaint is subject to dismissal except in certain limited circumstances. OCGA § 50-21-35, by contrast, contains no such specific restrictions.

That the legislature chose not to impose a specific time limit or consequence for failing to properly comply with the mailing provision indicates that it intended courts to undertake a more flexible inquiry into a plaintiff's failure to comply. Thus, it is improper for a trial court to rule that the failure to immediately comply with the mailing requirement is necessarily fatal for the complaint in each and every instance. Instead, the courts should examine the consequences of the failure to provide proper notice, and should dismiss the complaint if the court is satisfied that the State has suffered some prejudice by the lack of notice.

3. In addition to mailing a copy of the complaint to the Attorney General, Camp also attempted to cure his original omission by filing an amended complaint certifying that he had complied with the mailing requirement. The trial court refused to permit the amendment, and the Court of Appeals affirmed, holding that amendments to complaints brought under the GTCA were not permitted. The Court of Appeals reasoned that because the GTCA provided no

---

[5] OCGA § 50-21-26 (a) (4) (giving plaintiffs a 30-day window, following the filing of a motion to dismiss, to cure the failure to attach the ante litem notice to the complaint).

specific authority for allowing amendments under this statute, the legislature must have intended to prohibit them.[6]

But the general rule, applicable to civil actions in the absence of specific statutory authority, is that amendments are generally allowed prior to the entry of a pretrial order.[7] In the absence of specific limitations, this general rule, rather than an unwritten general prohibition, should apply.[8] The General Assembly has chosen to specifically prohibit or restrict amendments in certain situations, such as the filing of expert affidavits in professional malpractice actions,[9] the filing of written verifications in cases implicating free speech concerns,[10] and the filing of ante litem notice in suits against the State.[11] These specific restrictions are examples of exceptions that prove the rule — where the legislature intended to specifically depart from the rule generally allowing amendments, it does so explicitly. Because there are no specific proscriptions against amendments to cure a defect in the certification requirement under OCGA § 50-21-35, an amendment should generally be allowed prior to the entry of a pretrial order unless there is good reason to deny it, such as where the statute of limitation has expired before the defect is cured.[12]

Plainly, the statute demands that a copy of the complaint be sent to the Attorney General as soon after filing as possible. Camp did not comply with that requirement in this case. But there is no express remedy, punishment, or consequence for failing to do so, and certainly no evidence that the legislature intended the draconian remedy of dismissal to apply in every case in which the Attorney General's copy was not immediately mailed after filing. There is likewise no explicit prohibition on the use of amendments, in conformance with the general rules of the Civil Practice Act, to cure such defects. In the absence of specific restrictions, courts should determine on a case by case basis whether the purpose of the statute, to provide prompt

---

[6] *Camp*, 271 Ga. App. at 353.

[7] OCGA § 9-11-15 (a).

[8] See OCGA §§ 9-11-1; 9-11-81 (Civil Practice Act applies to all civil actions unless specific conflicting rules are otherwise prescribed).

[9] See OCGA § 9-11-9.1 (b) (failure to file proper affidavit cannot be cured by amendment except in certain narrow circumstances).

[10] OCGA § 9-11-11.1 (b) (imposing a ten-day limit on plaintiff's right to cure failure to file written verification in cases implicating free speech rights).

[11] OCGA § 50-21-26 (a) (4); see also OCGA § 9-11-12 (h) (1) (listing defenses that are waived if not raised in initial response).

[12] See *Curry*, 232 Ga. App. at 704 (failure to comply with the requirements of OCGA § 50-21-35 before the expiration of the statute of limitation results in dismissal of complaint). But see *Howard v. State of Ga.*, 226 Ga. App. 543, 546 (487 SE2d 112) (1997) (action against the State, which was dismissed for failure to comply with ante litem notice requirements, can be re-filed within statute of limitation).

notice of the lawsuit to the Attorney General, has been so thoroughly undermined as to cause prejudice to the State and warrant dismissal of the lawsuit. Accordingly, this case is hereby remanded to the Court of Appeals, with direction.[13]

*Judgment affirmed in part and reversed in part. All the Justices concur, except Melton, J., who concurs specially.*

MELTON, Justice, concurring specially.

Although I concur in the majority's conclusion that sanctions for dilatory service on the State as a party do not pertain to the notice required to be given to the Attorney General as State's counsel under OCGA § 50-21-35, I write separately to emphasize that a court should not be powerless to dismiss a case when the plaintiff fails to timely notify the Attorney General without justification.

The stated intent of the Act at issue, which creates a limited right to sue the State, is "to balance strict application of the doctrine of sovereign immunity . . . against the need for limited 'exposure of the state treasury to tort liability.' [Cit.]" *Norris v. Dept. of Transp.*, 268 Ga. 192 (486 SE2d 826) (1997). Pursuant to OCGA § 50-21-35, a plaintiff has a responsibility to *immediately* inform the Attorney General that a legal proceeding has been initiated. The purpose of this requirement is to promote the efficient administration of justice by providing the Attorney General with the immediate and maximum opportunity to investigate a claim against the State and to file a prompt and timely answer.

The undisputed facts of this case show that the plaintiff, without any cogent justification, failed to notify the Attorney General of the pendency of the case until almost a year after his lawsuit had been instituted, and for over nine months after the oversight had been brought to the plaintiff's attention by way of a "special appearance" answer filed by the State. Nothing in OCGA § 50-21-35 allows a plaintiff to so completely abrogate the duty to notify the Attorney General. Accordingly, while I agree with today's decision that trial courts can order the dismissal of a lawsuit for lack of prompt notice to the Attorney General where the delay in giving notice is prejudicial, I am of the opinion that a sensible and meaningful reading of the statute also allows a court to bar a plaintiff's limited right to pursue a tort remedy against the State when compliance with the mandatory notice requirement is wholly disregarded, even in the instance where actual prejudice cannot be established. To hold otherwise would

---

[13] We express no opinion regarding any other issue addressed by the Court of Appeals, including the ante litem notice issue addressed in Division 3 of that opinion. *Camp*, 271 Ga. App. at 354. Accordingly, that Division is hereby affirmed. *Security Life Ins. Co. of America v. Clark*, 273 Ga. 44 (535 SE2d 234) (2000).

wholly upset the balance between the longstanding doctrine of sovereign immunity and the limited rights extended to plaintiffs to sue the State in certain exceptional circumstances.

DECIDED JANUARY 17, 2006 —
RECONSIDERATION DENIED FEBRUARY 13, 2006.

*Vaughan & Evans, Donald C. Evans, Jr.,* for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Richard V. Merritt, Robert C. Edwards, Assistant Attorneys General, Hawkins & Parnell, Brenda Godfrey, Kim M. Jackson,* for appellees.