In the Supreme Court of Georgia

Decided:   June 16, 2014

S13G1555. GEORGIA DEPARTMENT OF CORRECTIONS v. COUCH.

NAHMIAS, Justice.

David Lee Couch filed a tort lawsuit against the Georgia Department of Corrections.  After the Department rejected Couch's offer to settle the case for $24,000, the case proceeded to trial, where the jury returned a verdict for Couch in the amount of $105,417.  Based on Couch's 40% contingency fee agreement with his attorneys, the trial court ordered the Department to pay Couch $49,542 in attorney fees – 40% of his total recovery, after appeal, including post-judgment interest – as well as $4,782 in litigation expenses, pursuant to the "offer of settlement" statute, OCGA § 9-11-68 (b) (2).  The Court of Appeals upheld that award.  See Ga. Dept. of Corrections v. Couch, 322 Ga. App. 234 (744 SE2d 432) (2013).  This Court then granted certiorari to address two questions:

1.    Did the Court of Appeals err when it held that the sovereign immunity of the Department was waived by the Georgia Tort

Claims Act as to Couch's attorney fees?

2.     If the sovereign immunity of the Department was waived as to Couch's attorney fees, did the Court of Appeals err by failing to prorate the 40% contingency fee to reflect that some of the fees were incurred before the settlement offer was rejected?

For the reasons discussed below, we hold that the sovereign immunity of the Department was waived as to the attorney fees award under OCGA § 9-11-68 (b), but that the trial court did not properly calculate the amount of the award. We therefore affirm the judgment of the Court of Appeals in part, reverse it in part, and remand the case with direction.

1. (a) The Court of Appeals summarized the basic facts of this case as follows:

> [In July 2004,] Couch was part of a team of Walker State Prison inmates who were painting the warden's house. While he was working, a dry-rotted joist gave way, causing him to fall and land with his legs straddling a joist. As a result of the fall, Couch suffered a severed urethra. Couch filed a premises liability action against the Department for damages for physical injuries he sustained, and the jury returned a verdict in favor of Couch in the amount of $105,417.

> Before the trial, Couch made a written offer of settlement in the amount of $24,000, which the Department rejected. After the verdict, which was greater than 125 percent of the offer of settlement, Couch moved for attorney fees and expenses pursuant

2

to OCGA § 9-11-68, the offer of settlement statute, in the amount of $104,158.79, based on an hourly rate, despite a contingency fee arrangement for 40 percent of the final recovery. The Department subsequently moved to dismiss Couch's claim for attorney[ ] fees based on lack of subject matter jurisdiction. It maintained that the Georgia Constitution only permits recovery of damages against a state entity resulting from a tort as provided in the [Georgia Tort Claims Act], and that there is no express waiver contained in the GTCA authorizing the award of attorney fees.

322 Ga. App. at 235 (footnote and citations omitted).[1] After holding an evidentiary hearing, the trial court issued an order denying the Department's motion to dismiss, ruling that the State had waived sovereign immunity with regard to attorney fees awarded under OCGA § 9-11-68 (b). Relying on the 40% contingency fee agreement, the court then awarded Couch $49,542 in attorney fees, calculated as 40% of his "ultimate recovery," after appeal, of $123,855.65, which included post-judgment interest and court costs. The court also awarded Couch $4,782 in litigation expenses, for a total award of $54,324. As noted previously, the Court of Appeals affirmed that award, and we granted certiorari.

(b) OCGA § 9-11-68, commonly called the "offer of settlement" statute,

---

[1] The underlying facts of the case are recounted more fully in Georgia Department of Corrections v. Couch, 312 Ga. App. 544 (718 SE2d 875) (2011), which affirmed the jury's verdict.

3

was originally added to Georgia's Civil Practice Act (CPA) as part of tort reform legislation that became effective on February 16, 2005, see Ga. L. 2005, p. 1, § 5, and was then amended effective April 27, 2006, see Ga. L. 2006, p. 446, § 1.[2] As this Court explained in upholding § 9-11-68 against a variety of constitutional challenges, the "clear purpose" of the statute "is to encourage litigants in tort cases to make and accept good faith settlement proposals in order to avoid unnecessary litigation," thereby advancing "this State's 'strong public policy of encouraging negotiations and settlements.'" Smith v. Baptiste, 287 Ga. 23, 29 (694 SE2d SE2d 83) (2010) (citation omitted).

---

[2] We note that Couch's tort cause of action accrued when he was injured in July 2004, before the original version of § 9-11-68 (b) was enacted, and that he filed this lawsuit in November 2005, before the statute was amended to its current form. This Court has held that § 9-11-68 (b) "affects the rights of parties by imposing an additional duty and obligation to pay an opposing party's attorney fees when a final judgment does not meet a certain amount or is one of no liability," and thus that the Georgia Constitution's ban on retrospective application of laws that substantively affect vested private rights prohibits the application of § 9-11-68 (b) to tort cases that were already pending when the statute was enacted. Fowler Properties, Inc. v. Dowland, 282 Ga. 76, 77-78 (646 SE2d 197) (2007). See also Mikesell v. RP Motorsports, Inc., 283 Ga. 476, 476-477 (660 SE2d 534) (2008). In a divided opinion, the Court of Appeals has held that § 9-11-68 (b) cannot constitutionally be applied to a case in which the tort cause of action accrued before the statute was enacted, even if the lawsuit was filed after enactment. See L.P. Gas Indus. Equip. Co. v. Burch, 306 Ga. App. 156, 157-158 (701 SE2d 602) (2010). This Court granted a writ of certiorari to address that question, but later dismissed the writ when the parties settled, leaving the issue unresolved. See Case No. S11G0226. We need not decide any question of retroactivity here, because in the trial court and on appeal, both the Department and Couch have proceeded on the assumption that the current version of § 9-11-68 (b) governs this case, and we will do the same. See Smith v. Baptiste, 287 Ga. 23, 29-30 (694 SE2d SE2d 83) (2010) (refusing to consider the claim, raised for the first time on appeal, "that the current version of OCGA § 9–11–68 became effective after this lawsuit was filed, and that retroactive application of it to this case is unconstitutional").

4

The statute applies to a written offer to settle a tort claim made more than 30 days after the service of the summons or complaint but not less than 30 days before trial (or 20 days for a counteroffer). See OCGA § 9-11-68 (a) (enumerating the requirements for such an offer), (c) (discussing additional procedures and interpretive rules for offers and their acceptance or rejection). The subsection of the statute directly at issue in this case, subsection (b), explains when a defendant or plaintiff is entitled to an award:

(1) If a defendant makes an offer of settlement which is rejected by the plaintiff, the defendant shall be entitled to recover reasonable attorney's fees and expenses of litigation incurred by the defendant or on the defendant's behalf from the date of the rejection of the offer of settlement through the entry of judgment if the final judgment is one of no liability or the final judgment obtained by the plaintiff is less than 75 percent of such offer of settlement.

(2) If a plaintiff makes an offer of settlement which is rejected by the defendant and the plaintiff recovers a final judgment in an amount greater than 125 percent of such offer of settlement, the plaintiff shall be entitled to recover reasonable attorney's fees and expenses of litigation incurred by the plaintiff or on the plaintiff's behalf from the date of the rejection of the offer of settlement through the entry of judgment.

OCGA § 9-11-68 (b). Subsection (d) then directs that, unless the trial court determines "that [the] offer was not made in good faith in an order setting forth the basis for such a determination," the court must order such an award "upon

5

receipt of proof that the judgment is one to which . . . subsection (b) of this Code section appl[ies]; provided, however, that if an appeal is taken from such judgment, the court shall order payment of such attorney's fees and expenses of litigation only upon remittitur affirming such judgment." OCGA § 9-11-68 (d).

There is no question that the preconditions for an award of attorney fees and litigation expenses under § 9-11-68 (b) were satisfied in this case. On November 14, 2007, two years after filing his tort suit, Couch made an indisputably good-faith offer to settle for just $24,000. The Department did not respond within 30 days, rendering the offer rejected pursuant to § 9-11-68 (c). As a result, Couch had to continue pretrial litigation for another 16 months and then try the case before a jury for three days in April 2009. The trial resulted in a verdict and judgment for Couch of $105,417, far greater than 125% of his rejected offer, and that judgment was sustained despite the Department's appeal. Thus, this would seem to be a clear case for an award of attorney fees and litigation expenses to the plaintiff under § 9-11-68 (b) (2). The Department argues, however, that sovereign immunity protects it against any such award, and that even if an award was permissible, the trial court erred in calculating it. We turn to the sovereign immunity question first.

2. Under Georgia law today, sovereign immunity has constitutional status, and that immunity may be waived only by an act of the General Assembly or by the Constitution itself. See Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc., 294 Ga. 593, 597-598 (755 SE2d 184) (2014) (reviewing the history of sovereign immunity in Georgia). As amended in 1991, the Georgia Constitution says:

> (a) The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide. . . .

> (e) Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX.

To accompany the 1991 constitutional amendment, the General Assembly enacted the Georgia Tort Claims Act (GTCA), OCGA §§ 50-21-20 to 50-21-37, which waives sovereign immunity in the following terms:

7

(a) The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in [the GTCA]. The state shall have no liability for losses resulting from conduct on the part of state officers or employees which was not within the scope of their official duties or employment.

(b) The state waives its sovereign immunity only to the extent and in the manner provided in [the GTCA] and only with respect to actions brought in the courts of the State of Georgia. The state does not waive any immunity with respect to actions brought in the courts of the United States.

OCGA § 50-21-23.

The Department does not dispute that the GTCA's waiver of sovereign immunity allowed Couch to bring this tort lawsuit against the Department and to recover damages for the personal injury he suffered.[3] The Department contends, however, that an award of attorney fees under OCGA § 9-11-68 (b) does not come within the scope of this waiver. In addressing this issue, we recognize that "'[i]mplied waivers of governmental immunity should not be

---

[3] The Department comes clearly within the scope of the GTCA, which defines "state" to include "the State of Georgia and any of its offices, agencies, authorities, *departments*, commissions, boards, divisions, instrumentalities, and institutions." OCGA § 50-21-22 (5) (emphasis added).

8

favored,'" but also that "[t]his does not mean that the Legislature must use specific 'magic words' such as 'sovereign immunity is hereby waived' in order to create a specific statutory waiver of sovereign immunity." Colon v. Fulton County, 294 Ga. 93, 95 (751 SE2d 307) (2013) (citation omitted).

(a) In response to the Department's contention, Couch posits that the statutory authority for an award of attorney fees against the state under § 9-11-68 (b) is found in the GTCA's definitions of "claim" and "loss." The GTCA defines a "claim" as "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee committed while acting within the scope of his or her official duties or employment," OCGA § 50-21-22 (a), and then defines "loss" as

> personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence.

OCGA § 50-21-22 (3).

Couch contends that § 9-11-68 (b) attorney fees are "[an]other element of actual damages recoverable in actions for negligence." He also invokes cases holding that the constitutional and statutory waiver of sovereign immunity for

9

"actions ex contractu" authorizes an award of attorney fees and litigation expenses in such actions under OCGA § 13-6-11.[4]  In <u>Department of Transportation v. Fru–Con Construction Corporation</u>, 206 Ga. App. 821 (426 SE2d 905) (1992), the Court of Appeals expressed the rationale for those decisions:

> OCGA § 13-6-11 does not create an independent cause of action. That statute merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of his damages.  The damages allowed under this Code section are compensatory, not punitive or vindictive.  The constitutional waiver of sovereign immunity in contract actions against the state is *not* limited to a waiver of only certain elements of recoverable compensatory damages.

<u>Fru-Con</u>, 206 Ga. App. at 826 (emphasis in original; citations and punctuation omitted).  See also <u>Forsyth County v. Martin</u>, 279 Ga. 215, 219 (610 SE2d 512) (2005) (concluding that counties may be subject to an award of attorney fees

---

[4]  As to contract actions, the Constitution's sovereign immunity paragraph says: "The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c).  OCGA § 50-21-1 similarly says: "The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract existing on April 12, 1982, or thereafter entered into by the state, departments and agencies of the state, and state authorities."  OCGA § 13-6-11 says: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

10

under OCGA § 13-6-11 because such an award "is not intended to penalize or punish, but to compensate an injured party for the costs incurred as a result of having to seek legal redress for the injured party's legitimate grievance"). Citing Fru-Con, the Court of Appeals concluded in this case, "[l]ikewise, OCGA § 9-11-68 does not provide for an independent cause of action, but merely establishes circumstances in the event of the rejection of an offer of settlement under which attorneys fees shall be paid." Couch, 322 Ga. App. at 238.

OCGA §§ 13-6-11 and 9-11-68 (b) are differently worded, however. Section 13-6-11 expressly makes its litigation expenses "part of the damages" to be awarded by the jury, and an award under § 13-6-11 must be based on "conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself." David E. Brown, P.E. v. Kent, 274 Ga. 849, 850 (561 SE2d 89) (2002).[5] By contrast, attorney

---

[5] Specifically, the element of bad faith that will support a claim for expenses of litigation under OCGA § 13-6-11[ ] must relate to the acts in the transaction itself prior to the litigation, not to the motive with which a party proceeds in the litigation. And statutory recovery for stubborn litigiousness or causing unnecessary trouble and expense is authorized if there exists no bona fide controversy or dispute regarding liability for the underlying cause of action.

Kent, 274 Ga. at 850 (citation omitted).

11

fees awarded under § 9-11-68 (b) are not identified as "damages"; they relate entirely to conduct during the course of the litigation; and they are determined post-judgment by the court rather than during trial by the jury. Compare Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt, 286 Ga. 731, 735 (691 SE2d 218) (2010) ("As with all torts, the determination of damages rests 'peculiarly within the province of the jury.'" (citation omitted)). Moreover, attorney fees are not named among the many forms of damages enumerated in § 50-21-22 (3), nor are they ordinarily considered an "element of actual damages recoverable in actions for negligence" (which is why they are not ordinarily recoverable as damages in negligence actions). It is also doubtful that attorney fees awarded under § 9-11-68 (b) due to the decision by the defendant state agency (and the Department of Administrative Services, which must approve any settlement in an action under the GTCA, see § 50-21-36) to reject a plaintiff's settlement offer can be characterized as a loss proximately "caused by the tort" that was the basis for that lawsuit. Compare Kent, 274 Ga. at 850.

Most telling, however, is that unlike § 13-6-11, which allows an award of attorney fees only to "the plaintiff," attorney fees may be awarded under § 9-11-68 (b) to whichever party's offer of settlement was rejected – plaintiff and

12

defendant alike. Whether awarded to a plaintiff or a defendant, § 9-11-68 (b) fees are the same thing, and because attorney fees when awarded *to* the defendant under § 9-11-68 (b) are obviously not an element of the "actual damages" caused by the tort allegedly committed *by* that defendant, such fees cannot sensibly be said to come within the scope of § 50-21-22 (3) when awarded to the plaintiff in the same action.

We therefore agree with the Department that Fru-Con and similar cases decided under § 13-6-11 are not controlling here, and that an attorney fees award under § 9-11-68 (b) does not come within the GTCA's definition of a tort "claim" because the expended fees are not a "loss." We also agree with the Department that § 9-11-68 (b) does not create an independent tort (or other) cause of action. Instead, the attorney fees awarded under the offer-of-settlement statute are wholly dependent upon the parties' conduct during the underlying tort action and may be sought only in connection with such an action – a realization that leads to the conclusion that sovereign immunity is indeed waived for such awards.

(b)    While payments of attorney fees and litigation expenses under § 9-11-68 (b) are not made as compensation for a tort "claim," they are made as

13

an incident of a party's inappropriate conduct in the underlying tort *action*. And the waivers of sovereign immunity that the Constitution provides and authorizes the General Assembly to provide by statute are not limited to particular tort "claims" that may be raised within a lawsuit but instead reach more generally to tort "suits" and tort "actions." See, with emphases added, Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a) ("The General Assembly may waive the State's sovereign immunity from *suit* by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of *actions* or claims against the State and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide."); OCGA §§ 50-21-21 ("[I]t is declared to be the public policy of this state that the state shall only be liable in tort *actions* within the limitations of this article and in accordance with the fair and uniform principles established in this article."), 50-21-23 (b) ("The state waives its sovereign immunity only to the extent and in the manner provided in [the GTCA] and only with respect to *actions* brought in the courts of the State of Georgia. The state does not waive any immunity

14

with respect to *actions* brought in the courts of the United States.").[6]

The GTCA's waiver of sovereign immunity from tort *actions* indicates that such cases proceed under the usual rules of practice and procedure applicable to such tort suits, subject to the various exceptions and limitations specified in the GTCA. Thus, the core waiver provision in the GTCA says:

> The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same *manner* as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.

OCGA § 50-21-23 (a) (emphasis added).[7] The General Assembly did not need to more explicitly incorporate the provisions of the Civil Practice Act, because the CPA by its own terms applied generally to the tort lawsuits authorized by the GTCA at the time the GTCA was enacted. See OCGA §§ 9-11-1 ("This chapter [the CPA] governs the procedure in all courts of record of this state in all actions

---

[6] The constitutional and statutory waivers of sovereign immunity for contract disputes are similarly worded not in terms of contract "claims" but rather of any "*action* ex contractu." See footnote 5 above.

[7] See Black's Law Dictionary 869 (5th ed. 1979) (defining "manner" as "[a] way, mode, or method of doing anything, or mode of proceeding in any case or action"); Webster's New World Dictionary 367 (1987) (defining "manner" as "a way of doing something; mode of procedure").

15

of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Code Section 9-11-81), 9-11-81 ("This chapter shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law; but, in any event, the provisions of this chapter governing the sufficiency of pleadings, defenses, amendments, counterclaims, cross-claims, third-party practice, joinder of parties and causes, making parties, discovery and depositions, interpleader, intervention, evidence, motions, summary judgment, relief from judgments, and the effect of judgments shall apply to all such proceedings.").

In other words, the GTCA did not enact a whole new scheme for civil practice in the tort lawsuits it authorizes. Instead, the General Assembly took the CPA as the default rules and crafted specific exceptions and limitations as deemed necessary. We have expressed this understanding before, rejecting the state's argument that the GTCA is a entirely self-contained limitation on the waiver of sovereign immunity and explaining:

> The Georgia Tort Claims Act is not a civil procedure statute. It touches on procedural matters only incidentally. It makes no provision for the form of pleadings and motions, pretrial discovery,

16

trial practice, or the entry of judgments and summary judgments. Thus, if Georgia Tort Claims Act cases are ever to be litigated, the courts will have to look elsewhere for answers to procedural questions. The place to find these answers is the Civil Practice Act.

Ga. Pines Community Serv. Bd. v. Summerlin, 282 Ga. 339, 341 (2007). See also Camp v. Coweta County, 280 Ga. 199, 203 (2006) ("In the absence of specific limitations [in the GTCA], this general rule [of civil procedure], rather than an unwritten general prohibition, should apply.").[8]

Nothing in the GTCA suggests that the General Assembly meant to exclude the state, where it has waived sovereign immunity and allowed a tort action to proceed against it, to avoid the consequences under the CPA that other civil litigants face for improper litigation conduct – including an award of attorney fees and litigation expenses under § 9-11-68 (b) for rejecting a

---

[8] A good example of the interplay between the GTCA and the CPA relates to the time the state is given to file an answer to the complaint initiating a tort action against it. The GTCA specifies in § 50-21-35 that the plaintiff must serve process on persons other than just the named defendants as provided in § 9-11-4 (a) of the CPA. That section of the GTCA then says, "The time for the state to file an answer shall not begin to run until process has been served upon all required persons" – but the GTCA nowhere says what that time is. The General Assembly was plainly referring to *some* established time limit, and did not mean to allow the state to choose to answer the complaint whenever it felt like it, or never at all, foreclosing progress toward a disposition of the case in the meantime. Thus, it is evident that, once the GTCA's special requirements for service of process have been satisfied, the deadline for filing an answer in civil actions set forth in § 9-11-12 (a) of the CPA, which is normally 30 days, applies. See Dept. of Transp. v. Gilmore, 209 Ga. App. 656, 657-658 (434 SE2d 114) (1993) (applying § 9-11-12 (a) and related CPA provisions in determining whether the state defendant's answer in a malpractice action was untimely).

reasonable settlement offer and pursuing further unnecessary litigation. Our legislature knows how to exempt the state from normal expenses of civil litigation; the CPA includes a section generally exempting the state from paying court costs that other litigants pay when they lose a case. See OCGA § 9-11-54 (d) ("Except where express provision therefor is made in a statute, costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs; but costs against this state and its officers, agencies, and political subdivisions shall be imposed only to the extent permitted by the law."). The legislature also knows how to cap or exclude particular elements from the state's financial exposure in the tort actions for which it has waived sovereign immunity. See OCGA §§ 50-21-29 (b) (setting caps on the state's liability in actions brought under the GTCA), 50-21-30 (excluding punitive damages and prejudgment interest from awards of damages).[9]

The Department points out that the GTCA includes a provision expressly

---

[9] We need not and therefore do not decide in this case whether a judgment in a GTCA case exceeding the cap of $1 million or $3 million on the state's liability provided in § 50-21-29 (b) must be reduced to the cap amount before the court determines under § 9-11-68 (b) if the judgment exceeds 125% of the offer of settlement. See UCF Athletics Assn. Inc. v. Plancher, 121 So3d 616, 617-619 (Fl. 5th Dist. Ct. App. 2013) (addressing this issue in the context of Florida's offer of settlement statute). We also need not decide here whether attorney fees and litigation expenses awarded under § 9-11-68 (b) must be included in the sums subject to the caps on the state's liability set forth in § 50-21-29 (b).

providing for an award of attorney fees for improper litigation conduct, see

OCGA § 50-21-32,[10] and contends that this demonstrates that the General

Assembly meant to exclude other similar attorney fees awards. But § 50-21-32

*mandates* attorney fees awards in situations *beyond* those provided for in the

CPA, along the lines of the strict version of Federal Rule of Civil Procedure 11

that existed when the GTCA was enacted but was never made part of our Civil

Practice Act. See OCGA § 9-11-11 (not providing any sanction related to the

signing of pleadings). Thus, § 50-21-32 actually indicates that the General

Assembly meant for the GTCA to *supplement* weaker provisions allowing

attorney fees awards intended to rein in inappropriate conduct during tort

---

[10] OCGA § 50-21-32 says:

In any claim, action, or proceeding brought under this article, the signature of an attorney or party constitutes a certificate by him or her that he or she has read the pleading, motion, or other paper; that to the best of his or her knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Code section, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including reasonable attorneys' fees.

19

litigation, not to *supplant* such provisions, while also demonstrating that the General Assembly did not view all awards of attorney fees against the state as forbidden. It would have been easy enough for the General Assembly in enacting § 9-11-68 in 2005 or in amending the statute in 2006 to exclude attorney fees awards against the state, but unlike other state legislatures, our legislature did not do so. Compare, e.g., Tex. R. Civ. P. 167.1 (c) (offer of settlement statute similar to OCGA § 9-11-68 (b) but specifically excluding from its ambit "an action by or against the State, a unit of state government, or a political subdivision of the State").

We also note that, just a few years before the GTCA was enacted, our Court of Appeals decided, in a whole-court opinion, that sovereign immunity did not preclude a taxpayer from recovering both prejudgment interest and attorney fees against a county due to the county's unnecessary litigiousness during a tax refund action, based on the statutes generally authorizing those recoveries in such litigation (including § 13-6-11) rather than specific statutes authorizing such recoveries against a government entity. See Eastern Air Lines, Inc. v. Fulton County, 183 Ga. App. 891, 892-893, 894-895 (360 SE2d 425) (1987). The GTCA expressly abrogated the prejudgment interest holding of

20

Eastern Air Lines, prohibiting awards of such interest in tort actions against the state, see OCGA § 50-21-30 – but the General Assembly did not similarly prohibit awards of attorney fees against the state for litigation misconduct based on statutes outside the GTCA.

Finally, we recognize that an award of attorney fees under § 9-11-68 (b) requires the state to make a payment from the treasury, and that a fundamental purpose of sovereign immunity is the protection of state funds. See OCGA § 50-21-21 (recognizing "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity," but also stating that "[t]he exposure of the state treasury to tort liability must . . . be limited"); In Interest of A.V.B., 267 Ga. 728, 728 (482 SE2d 275) (1997) ("[T]he primary purpose of sovereign immunity is to protect state coffers"). As discussed above, however, an award under § 9-11-68 (b) is not an independent tort "claim" or a component of tort damages; rather, such awards are best understood as one of many potential costs associated with tort litigation in Georgia, and in particular inappropriate conduct during such litigation.

Many of the rules that the CPA provides for the conduct of civil litigation, especially those governing pretrial discovery, require the parties to spend

considerable amounts of money – direct expenditures as well as payment for the services and expenses of the party's lawyers, witnesses, and others engaged in the litigation.[11] The CPA also authorizes trial courts to enforce these discovery requirements as well as professional conduct during litigation by the parties and their counsel with sanctions that include requiring the misbehaving party to pay the opposing party's resulting attorney fees and litigation expenses.[12]

We cannot say that the General Assembly, which waived sovereign immunity for tort actions against the state in the GTCA, meant for state defendants and their lawyers to then be free to violate the rules set forth for the

---

[11] See, e.g., OCGA §§ 9-11-30 (a) (4) (providing that depositions must be recorded and "the party taking the deposition shall bear the costs of the recording"), 9-11-33 (a) (2) (providing that a party must answer each interrogatory within 30 days of service), 9-11-34 (b) (2) (providing that a party must respond to requests for production of documents within 45 days and permit requested inspection or provide a specific reason for objecting to it).

[12] See, e.g., OCGA §§ 9-11-37 (a) (4) (A) (requiring the court to order the party, attorney, or both whose conduct necessitates the granting of a motion to compel discovery to pay the reasonable expenses, including attorney fees, incurred in obtaining the order, unless unjust), (b) (2) (requiring the court to order the party, attorney, or both that fails to comply with an order to provide or permit discovery to pay reasonable expenses, including attorney fees, caused by the failure, unless unjust), (d) (providing for the court to impose attorney fees on a party failing to attend his own deposition, to answer interrogatories, or to respond to requests for documents), 9-11-56 (g) (requiring the court to order a party submitting summary judgment affidavits in bad faith or solely for the purpose of delay to pay to the opposing party the reasonable expenses, including attorney fees, caused by the filing). See also OCGA § 9-15-14 (b) ("The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action . . . if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the 'Georgia Civil Practice Act.'").

22

proper conduct of such civil litigation and thus to sabotage the "just, speedy, and inexpensive determination" of such actions, OCGA § 9-11-1, while depriving the courts of the authority to sanction the state as provided by those rules. There is no distinct waiver of sovereign immunity as to civil discovery "claims," and the routine costs of discovery are not "actual damages" caused by a tort, but that does not mean that the state can refuse to provide any discovery in a tort action authorized by the GTCA. Having "waive[d] the state's sovereign immunity from suit by enacting a State Tort Claims Act," Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a), it was not necessary for the General Assembly to provide separate, explicit immunity waivers for every step of the resulting litigation that might require the state to pay money or otherwise expend resources. See Fulton County v. Lord, 323 Ga. App. 384, 393-394 (746 SE2d 188) (2013) (affirming an attorney fees award against the county under OCGA § 9-15-14 without any expressed concern about sovereign immunity, even though the county challenged the underlying case based on sovereign immunity).

We note in this regard that the monetary sanctions authorized by the CPA are not punitive damages, which the GTCA expressly protects the state from paying, see OCGA § 50-21-30, because CPA sanctions do not punish the state

23

for the tortious conduct underlying the litigation but instead simply ensure that the state follows the same rules that all parties must follow when engaging in civil litigation. Indeed, allowing § 9-11-68 (b) awards against state defendants ultimately should advance the fundamental purpose of sovereign immunity, since it is entirely in the interest of the taxpayers who fund the state treasury that the state act appropriately in litigating tort suits brought against it pursuant to the GTCA, rather than wasting resources in continuing to litigate weak cases after rejecting reasonable settlement offers.

(c)    For these reasons, we hold that sovereign immunity did not bar an award of attorney fees and litigation expenses against the Department under OCGA § 9-11-68 (b), and we therefore affirm that part of the Court of Appeals judgment, albeit it under a different rationale.

3.    Because we have concluded that sovereign immunity did not protect the Department from an award under OCGA § 9-11-68 (b), we must address the issue of whether the trial court properly calculated the amount of the attorney fees award.[13] We conclude that the trial court (and the Court of Appeals) erred,

---

[13] In the Court of Appeals, the Department also challenged the trial court's award of $4,782 in litigation expenses, see Couch, 322 Ga. App. at 239, but in this Court the Department disputes only the calculation of the attorney fees. We note that the affidavit submitted by Couch's attorneys

24

in two different respects.

(a) The trial court concluded that the amount of attorney fees to be awarded under OCGA § 9-11-68 (b) should be determined by the contingency fee agreement between Couch and his attorneys, which set the attorneys' compensation at 40% of the "final judgment."[14] The court therefore awarded Couch $49,542 in attorney fees – 40% of his "ultimate recovery" of $123,855.65, after appeal, including post-judgment interest and court costs. The Court of Appeals affirmed that ruling, saying that "the right to the 40 percent contingency fee was fixed by the judgment entered on the verdict, and the fee awarded by the trial court reflected that percentage." Couch, 322 Ga. App. at 239. The Court of Appeals added that "the trial court was presented with evidence of the hours worked and rates charged, substantiating the value and reasonableness of the services thereof." Id. That is true: with Couch's request

---

stated that they incurred $4,776.29 in expenses between the rejection of the settlement offer and the entry of judgment at trial; the record does not explain the de minimis discrepancy in the amount awarded.

[14] The contingency fee agreement itself, which we presume was in writing as required by Rule 1.5 (c) (1) of the Georgia Rules of Professional Conduct, found in State Bar Rule 4-102 (d), is not in the appellate record. The record does include Couch's response to the Department's request that he produce the fee contract, in which he objected but stated, "plaintiff has a 40 percent contingency fee contract with his attorneys." At the hearing on the motion for attorney fees, one of Couch's attorneys represented that the contract entitled them to 40% of the "final judgment," and the trial court's order accordingly awarded 40% of Couch's "ultimate recovery" after appeal.

for fees under § 9-11-68 (b), his lawyers submitted evidence that their services from the time the Department rejected the settlement offer through the judgment at trial were worth $99,382.50, presenting an affidavit showing that they worked on the case during that period for 397.53 hours at a billing rate of $250 an hour, although in a reply brief the lawyers explained that a clerical error had caused 27.6 hours to be entered twice and reduced the hourly fee total to $92,475. Our review of the record, however, and in particular the transcript of the hearing on attorney fees and the trial court's order, reveals no indication that the court relied on that evidence, rather than exclusively on the contingency fee agreement, in determining the amount of the award. That was error.

"It is well-settled that an award of attorney fees is to be determined upon evidence of the reasonable value of the professional services which underlie the claim for attorney fees." Southern Cellular Telcom v. Banks, 209 Ga. App. 401, 403 (433 SE2d 606) (1993). As the Court of Appeals has explained:

> "A court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees. When a party seeks fees based on a contingent fee agreement, [however,] the party must show that the contingency fee percentage was a usual or customary fee for such case and that the contingency fee was a valid indicator of the value of the

26

professional services rendered.  In addition, the party seeking fees must also introduce evidence of hours, rates, or some other indication of the value of the professional services actually rendered."

Brock Built, LLC v. Blake, 316 Ga. App. 710, 714-715 (730 SE2d 180) (2012)

(citation omitted).  Accordingly,

"[e]vidence of the existence of a contingent fee contract, without more, is not sufficient to support the award of attorney fees.  An attorney cannot recover for professional services without proof of the value of those services.  A naked assertion that the fees are 'reasonable,' without any evidence of hours, rates, or other indication of the value of the professional services actually rendered is inadequate."

Brandenburg v. All-Fleet Refinishing, Inc., 252 Ga. App. 40, 43 (555 SE2d 508)

(2001) (citation omitted).

A contingency fee agreement is a contract between the lawyer and the client regarding what the client agrees to pay, and what the lawyer agrees to be paid, for the work that the lawyer will do in the matter.  Entering such a contract is a gamble for both the lawyer and the client, because the value of the professional services actually rendered by the lawyer may be considerably higher or lower than the agreed-upon amount, depending on how the litigation proceeds.  While certainly a guidepost to the reasonable value of the services the

27

lawyer performed, the contingency fee agreement is not conclusive, and it cannot bind the court in determining that reasonable value, nor should it bind the opposing party required to pay the attorney fees, who had no role in negotiating the agreement. See Southern Cellular Telcom, 209 Ga. App. at 402 ("[The trial] court's conclusion that it was not bound, and could not as a matter of law be bound, by the [contingency fee] contract . . . was legally sound and reaffirms a principle long accepted by the courts of this state.").

Moreover, and particularly relevant to the situation here, by entering a contingency fee agreement, the lawyer and client assume many risks and uncertainties inherent in civil litigation, but they are not required to predict that the opposing party will be unnecessarily litigious or otherwise will fail to follow the law governing civil litigation in a sanctionable way, requiring the lawyer to provide additional services to protect the client from that improper conduct. Indeed, the basic purpose of statutes and rules that authorize attorney fees as a sanction for litigation abuse "would be thwarted if a party could escape the sanction whenever opposing counsel's compensation [owed by his client] is unaffected by the abuse, as when the fee arrangement is a contingency fee or . . . a flat rate" or if counsel is working pro bono. Centennial Archaeology, Inc.

28

v. Aecom, Inc., 688 F3d 673, 680 (10th Cir. 2012).

Thus, while the trial court was entitled to consider Couch's contingency fee agreement with his attorneys and the amount it would have generated as evidence of their usual and customary fees, the court erred in calculating what amount of attorney fees was reasonable based solely, as far as the record reflects, on that agreement rather than on evidence of hours, rates, or other indications regarding the value of the attorneys' professional services actually rendered. See Brock Built, LLC, 316 Ga. App. at 714-715.

(b)    The trial court's calculation was erroneous in another respect. Under OCGA § 9-11-68 (b) (2), plaintiffs are not entitled to recover *all* of their attorney fees in the case, only the "reasonable attorney's fees and expenses of litigation incurred by the plaintiff or on the plaintiff's behalf *from the date of the rejection of the offer of settlement through the entry of judgment*." The Court of Appeals acknowledged this limitation, but concluded nevertheless that Couch's attorneys were entitled to the full amount of fees provided by their contingency agreement because "when the contingency which fixed an attorney's entitlement to a fee is 'a jury verdict and judgment,' then [ ] 'the right to a specific amount as a contingent fee was fixed by the judgment.'" Couch,

29

322 Ga. App. at 234 (quoting Greer, Klosik & Daugherty v. Yetman, 269 Ga. 271, 274 (496 SE2d 693) (1998)). In support of this view that, because of the contingency fee agreement, Couch did not incur any attorney fees until the entry of judgment, which occurred after the Department's rejection of his settlement offer, Couch also cites Ellerin & Associates v. Brawley, 263 Ga. App. 860 (589 SE2d 626) (2003), where the Court of Appeals held that "'the happening of the contingency is a condition precedent to the right of the attorney to recover [ ] for his services'" from the client under a contingency fee contract. Id. at 861 (citation omitted).

Greer and Ellerin involved disputes between plaintiffs and their attorneys based on a contingency fee contract. The issue in this case is not when and to what extent Couch's attorneys were entitled to recover for their services *from Couch* according to their contract, but rather when and to what extent they performed services so that fees were incurred on Couch's behalf that he could recover *from the Department* according to § 9-11-68 (b). Although Couch may not have been obligated by contract to pay any fees until the final judgment was entered in his favor, his attorneys were performing services and incurring fees on his behalf from the start of the lawsuit (and likely for some time before that).

30

Greer and Ellerin do not stand for the proposition that when a contingency fee agreement exists, no attorney fees exist in a lawsuit until the contingency occurs. Indeed, as the Ellerin court went on to explain, if the client prevents the contingency from happening, the attorney remains "'entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client. Thus, although prevented from recovering under the contract, the attorney still has [a] remedy in quantum meruit.'" Ellerin, 263 Ga. App. at 862 (citation omitted). This conclusion accords with the common sense understanding that attorneys are accruing reasonable fees as they work on a case; they simply are not entitled to collect the amount of fees agreed to under a contingency fee contract *from their client* until the conditions of the contract have been met.

Ironically, the analysis that Couch endorses actually would result in *no* attorney fees being awarded under § 9-11-68 (b) in this and other contingency fee cases where the agreement provides that the lawyers are entitled to payment only *after* a final judgment has been entered. This is because § 9-11-68 (b) authorizes an award only of fees incurred "through the entry of judgment" at trial, not right afterwards and not after appeal – which, according to the trial court, was the trigger point for the contingency agreement between Couch and

31

his lawyers.[15]  Couch's approach also gives no import to the time limitation set forth in § 9-11-68 (b) and, contrary to the law discussed in the previous subdivision, places determinative weight on the existence of a contingency fee agreement in the calculation of the reasonable attorney fees due under the offer-of-settlement statute.  Under his view, where a contingency fee contract entitled an attorney to payment from his client at the time the judgment was entered (rather than some time thereafter), then based entirely on the existence of that contract between the plaintiff and his lawyer, a defendant would be required to pay for 100% of the services provided by the lawyer on the matter, even if the lawyer worked intensively for many years on the case before a settlement offer was made and rejected and comparatively little between the time the offer was rejected and a higher judgment was entered, and even though the reasonable value of the lawyer's services could not be determined based on the contingency contract.  We do not believe the statute bears this interpretation.  See generally Centennial Archaeology, 688 F3d at 678-682.

---

[15]  It is clear that "entry of judgment" as used in § 9-11-68 (b) refers to the judgment entered at trial, because § 9-11-68 (d) (1) says that the court cannot award fees "if an appeal is taken from such judgment" until the return of the "remittitur affirming such judgment."  See Wheatley v. Moe's Southwest Grill, LLC, 580 FSupp2d 1324, 1326 (N.D. Ga. 2008) (rejecting the defendants' request for attorney fees under § 9-11-68 (b) to the extent that the fees were incurred on appeal).

(c) For these reasons, we reverse the portion of the Court of Appeals' judgment affirming the trial court's calculation of the attorney fee award to Couch, and remand with direction that the case be remanded to the trial court for recalculation, in accordance with the principles discussed above, of the reasonable value of the professional services that Couch's attorneys actually provided during the period "from the date of the rejection of the offer of settlement through the entry of judgment." OCGA § 9-11-68 (b).

Judgment affirmed in part, reversed in part, and case remanded with direction. All the Justices concur.